Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/22/2018 08:15 AM CDT

State of Nebraska, appellee, v.
Anthony L. Wells, appellant.
___ N.W.2d ___

Filed June 22, 2018.    No. S-17-359.

1. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.
2. **Jury Instructions: Proof: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.
3. **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.
4. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
5. **Effectiveness of Counsel: Constitutional Law: Statutes: Records: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. An appellate court determines as a matter of law whether the record conclusively

shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance.

6. **Motions to Dismiss: Directed Verdict: Waiver: Appeal and Error.** A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution, and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence.

7. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.

8. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. Such a claim may be resolved when the record on direct appeal is sufficient to either affirmatively prove or rebut the merits of the claim. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

9. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

10. ____: ____. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

11. ____: ____. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

12. **Words and Phrases.** A reasonable probability is a probability sufficient to undermine confidence in the outcome.

13. **Effectiveness of Counsel: Presumptions.** The two prongs of the test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.

14. **Postconviction: Effectiveness of Counsel: Records: Claims: Appeal and Error.** In the case of an argument presented for the purpose of avoiding procedural bar to a future postconviction proceeding, appellate counsel must present a claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. A claim insufficiently stated is no different than a claim not stated at all.

Appeal from the District Court for Lancaster County: Darla S. Ideus, Judge. Affirmed.

Michael J. Wilson, of Schaefer Shapiro, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ., and Harder and Noakes, District Judges.

Miller-Lerman, J.

## I. NATURE OF CASE

Anthony L. Wells appeals his convictions in the district court for Lancaster County for first degree murder, use of a firearm to commit a felony, possession of a firearm by a prohibited person, and unlawful discharge of a firearm. Wells claims, inter alia, that he was prejudiced because the court's instruction regarding transferred intent incorrectly stated the law and that trial counsel provided ineffective assistance. We affirm Wells' convictions and sentences.

## II. STATEMENT OF FACTS

The charges against Wells arose from the shooting death of Joshua Hartwig. A group of residents had gathered outside Hartwig's apartment building after hearing a disturbance. Hartwig joined the group after the disturbance appeared to have ended, but several minutes later a man walked up and fired shots at the group. Hartwig was struck by a bullet and

died from the gunshot wound. Testimony of witnesses at Wells' trial established the following:

In the early morning hours of January 31, 2016, Wells and Rhani Henry, the mother of Wells' daughter, got into a physical and verbal altercation outside Henry's apartment building in Lincoln, Nebraska. Both Wells and Henry appeared to be intoxicated. Various residents of the apartment building heard the disturbance, and some residents came outside while the fight between Wells and Henry was ongoing. Certain residents separated Wells and Henry, and some residents told Wells that he needed to leave. Wells briefly argued with the residents, but then he got into his vehicle to leave. Before Wells left, some residents heard him say words to the effect that he would be back.

After Wells left, Hartwig and his father, Douglas Hartwig (Douglas), who were residents of the apartment building, joined the residents who remained outside. The group talked about the incident that had just happened. Approximately 10 to 15 minutes later, members of the group saw or heard a man approach and say some words to the group. The man then fired several shots. Witnesses generally agreed that the man was wearing a dark hooded sweatshirt with the hood pulled up and possibly a bandanna across his face. Although the man's face was obscured, certain witnesses identified the man as Wells based on his voice and physical features.

Douglas testified that he heard the man yell "'hey mother fuckers'" before he began shooting. Douglas turned and told Hartwig to run for cover, and the two ran toward their apartment. Douglas tripped and fell beside a car parked in front of the apartment; when he fell, he saw and heard a bullet hit the bumper of the car. Douglas testified that he heard "[a]t least a half dozen" shots, then a pause, and then "at least a half dozen more." After the shooting stopped, Douglas got up and heard one of the other residents say that Hartwig was "down." Douglas found Hartwig lying face down in front of their apartment door. Douglas went inside to call for emergency

services, and when he returned to Hartwig, Douglas observed what appeared to be a gunshot wound to Hartwig's upper shoulder. When emergency responders arrived, they attempted lifesaving procedures on Hartwig, but after a short period they declared him deceased.

Other testimony presented by the State included the testimony of Artesia Holmes, a friend of Henry. Holmes testified that she, Henry, and Wells went to a bar on the evening of January 30, 2016, to celebrate Henry's birthday. Before they went to the bar, Holmes and Henry had drinks at Holmes' apartment. When Wells arrived to pick them up, Holmes observed that Wells was in possession of a silver and black handgun. Henry also testified at trial, but she stated that she did not remember anything from that night after Wells arrived at Holmes' apartment. Other witness testimony is discussed in the analysis below as it relates to Wells' claims of ineffective assistance of trial counsel.

Physical evidence presented by the State indicated bullet damage to various areas of the apartment building, as well as to vehicles parked near the building. Law enforcement officers collected 13 shell casings, 1 bullet fragment, and 2 bullets from the scene. They found a third bullet inside a window of a house two blocks from the scene. A firearms examiner testified that the shell casings were all fired in the same firearm and that they matched the caliber and manufacturer of an unfired cartridge found in a search of Wells' bedroom. Due to damage to the bullets, the examiner could not determine whether the bullets had been fired from the same gun.

Video from surveillance cameras in the area of the apartment building recorded around the time of the shooting indicated the following: Video from a nearby apartment complex showed a vehicle similar to Wells' leaving the apartment building at 1:16 a.m. A surveillance camera at a business near the apartment recorded the sound of 13 gunshots at 1:26 a.m. A camera located several blocks from the apartment showed a vehicle similar to Wells' driving by at 1:28 a.m.

When that video was enhanced, it appeared to show an object being thrown from the vehicle. Law enforcement officers who searched that location found a black hooded coat with a face mask in the pocket. Testing of DNA on the inside of the mask included Wells as a major contributor.

The State also presented evidence that Wells had a prior conviction for possession of a firearm by a prohibited person.

After the State rested its case, Wells moved for a directed verdict on the count of unlawful discharge of a firearm. The court overruled Wells' motion for a directed verdict, and Wells proceeded to present evidence in his defense.

In his defense, Wells presented testimony by two women who testified that Wells picked them up at a location in Council Bluffs, Iowa, after they finished work at around 2:05 a.m. or 2:10 a.m. on January 31, 2016. He also presented evidence that two of the State's witnesses were unable to identify Wells from a police photographic lineup and that one of the two identified another person in the photographic lineup. Both witnesses had identified Wells as the shooter based on his voice.

The court instructed the jury on the elements of the offenses with which Wells was charged, including first degree murder and the lesser-included offenses of second degree murder and manslaughter. The court also gave an instruction, over Wells' objection, regarding transferred intent. The content of the relevant instructions and Wells' objections thereto are discussed in the analysis below.

The jury found Wells guilty of all four counts charged—first degree murder, use of a firearm to commit a felony, possession of a firearm by a prohibited person, and unlawful discharge of a firearm. The court sentenced Wells to consecutive terms of imprisonment for life for first degree murder, for 20 to 30 years for use of a firearm to commit a felony, for 20 to 40 years for possession of a firearm by a prohibited person (which was a second offense), and for 10 to 10 years for unlawful discharge of a firearm.

Wells appeals his convictions and sentences.

## III. ASSIGNMENTS OF ERROR

Wells claims that the district court erred (1) when it gave an instruction regarding transferred intent which incorrectly stated the law and (2) when it overruled his motion for a directed verdict on the count of unlawful discharge of a firearm.

Wells further claims that his trial counsel provided ineffective assistance when counsel (1) failed to object to testimony regarding prior bad acts involving his assaults on Henry, (2) elicited and then failed to object to hearsay testimony regarding Henry's fear of Wells, (3) failed to move for a mistrial based on the State's comments during closing arguments to the effect that a witness feared Wells, and (4) failed to adequately investigate various aspects of his defense.

## IV. STANDARDS OF REVIEW

[1-3] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017). In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *Id*.

[4] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018).

[5] Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. We determine as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. READING INSTRUCTIONS AS A WHOLE, WE DETERMINE THE INSTRUCTION REGARDING TRANSFERRED INTENT DID NOT MISSTATE THE LAW AND WAS NOT MISLEADING

Wells first claims that the district court erred when it gave its instruction regarding transferred intent. He notes that although the instruction referred to "intent," it did not contain a reference to "'deliberate and premeditated malice.'" Brief for appellant at 11. He argues that the instruction incorrectly stated the law as to first degree murder because it conflated "intent" with "'deliberate and premeditated malice'" and "relieved the State of its burden to prove that Wells acted with malice toward at least one of the people in the group" at which he allegedly fired shots. *Id*. at 10. We conclude that the instructions read as a whole correctly stated the law and were not misleading.

In instruction No. 3, the court instructed the jury on "Count I," first degree murder, by setting forth the elements as follows:

The elements which the State must prove beyond a reasonable doubt in order to convict . . . Wells of Murder in the First Degree are:

1. That . . . Wells killed . . . Hartwig; and

2. That . . . Wells did so purposely; and

3. That . . . Wells did so with deliberate and premeditated malice; and

4. That . . . Wells did so on or about January 31, 2016, in Lancaster County, Nebraska.

Instruction No. 3 continued by instructing on the lesser-included offenses of second degree murder and manslaughter, each of which included an element that Wells killed Hartwig "intentionally."

Over Wells' objection, the court also gave instruction No. 7, a transferred intent instruction, which stated as follows:

With respect to the charge in Count I, if you find that . . . Wells intended to kill a specific person, and by mistake or accident killed . . . Hartwig, the element of intent is satisfied even though . . . Wells did not intend to kill . . . Hartwig. In such a case, the law regards the intent as transferred from the original intended victim to the actual victim.

Instruction No. 11, regarding intent, instructed the jury that "[i]n deciding whether . . . Wells acted with intent (purpose, knowledge, wilfulness, premeditation, deliberation) you should consider his words and acts and all the surrounding circumstances."

At the jury instruction conference, Wells objected to instruction No. 7, the transferred intent instruction, on the basis that it was not supported by the evidence. He asserted that the evidence showed that the shooter fired into a crowd but that there did not appear to be a specific intent focused on a single individual. In contrast, the State argued the jury could find Wells guilty of first degree murder based on transferred intent if the jury found that Wells had the requisite intent to kill one or more of the people who had been outside during the earlier altercation with Henry and who had traded words with Wells but that instead he shot Hartwig. The State also argued in the alternative that the jury could find that Wells

had the requisite intent to kill any or all of the people, including Hartwig, who were standing outside the building at the time he fired the shots, regardless of whether they had been present at or involved in the earlier altercation.

Although Wells' objection to instruction No. 7 at trial focused on whether the instruction was supported by the evidence, he argues on appeal that the instruction incorrectly stated the law and was misleading. He notes that in order to convict him of first degree murder, the jury needed to find that he had killed Hartwig both "'purposely'" and "with 'deliberate and premeditated malice.'" Brief for appellant at 14 and 16. He argues that the phrase "the element of intent" in instruction No. 7 refers only to the "'purposely'" element of first degree murder and not to the "'malice'" element. *Id*. at 14 and 15. He contends that instruction No. 7 conflated "intent" and "malice" and allowed the jury to find him guilty of first degree murder if it found that he intended to shoot another person without requiring the jury to also find that he shot at another person "with 'deliberate and premeditated malice.'" *Id*. at 16. The State generally maintains that the jury instructions as a whole did not prejudice Wells.

As we read their arguments, both Wells and the State do not dispute that the concept of transferred intent is applicable to first degree murder, including where, as a general proposition, a defendant shoots into a group of people with intent "to kill at least one person in the group," reply brief for appellant at 3, "even if [the defendant] did not intend for [the] specific" actual victim to be killed, brief for appellee at 14. In this regard, reference is made to *State v. Gutierrez*, 272 Neb. 995, 726 N.W.2d 542 (2007), *disapproved on other grounds, State v. Britt*, 293 Neb. 381, 881 N.W.2d 818 (2016), a first degree murder case, in which we approved of a similar transferred intent instruction where the victims were not the intended target. See *State v. Morrow*, 237 Neb. 653, 467 N.W.2d 63 (1991) (considering instruction similar to *Gutierrez* instruction in second degree murder case). So the disagreement in

the instant appeal is limited to whether the jury instructions herein satisfactorily conveyed the applicable law to the jury. As explained below, we conclude that the instructions, taken as a whole, were adequate.

Given the nature of Wells' challenge, we must read the instructions as a whole to determine whether they correctly state the law and are not misleading. See *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016). Doing so, contrary to Wells' urging, we do not read the instructions in this case as having relieved the jury of the duty to find all the elements of first degree murder. Instead, we note instruction No. 3 sets forth all the elements of first degree murder, including that Wells killed Hartwig and that he did so both purposely and with deliberate and premeditated malice. Thus, the jury clearly was instructed that in order to find Wells guilty of first degree murder, it must find that the killing was committed both purposely and with deliberate and premeditated malice. We read nothing in instruction No. 7 that relieves the jury of finding any part of these requirements.

Instruction No. 7 does not purport to substitute or eliminate any required element of any offense charged. Instead, instruction No. 7, the transferred intent instruction, provides that if the jury finds that Wells intended to kill another person but by mistake or accident killed Hartwig, then "the element of intent is satisfied" and "the law regards the intent as transferred from the original intended victim to the actual victim." Instruction No. 7 is not intended as a reiteration of the elements of a crime. Instead, it serves as an explication solely regarding "intent."

As noted above, Wells maintains that "the element of intent" in instruction No. 7 refers only to the "'purposely'" element of first degree murder and not the "with 'deliberate and premeditated malice'" element. Brief for appellant at 14 and 16. Contrary to Wells' assertion, the language of instruction No. 7 provides no basis upon which jurors would read "the element

of intent" as referring to purpose but believe they had thereby been instructed to ignore the element of deliberate and premeditated malice. Instead, "the element of intent" refers to the intent required for the specific crime charged.

Our reading of instruction No. 7 is bolstered by instruction No. 11, noted above, in which the court instructed the jury that "[i]n deciding whether . . . Wells acted with intent (purpose, knowledge, wilfulness, premeditation, deliberation) you should consider his words and acts and all the surrounding circumstances." Instruction No. 11 communicates to the jury that "intent" includes, inter alia, "purpose," "premeditation," and "deliberation" when those are required elements of a charge.

We note that Wells compares the wording of instruction No. 7 to the wording of transferred intent instructions given in cases such as *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006), and *State v. Gutierrez*, 272 Neb. 995, 726 N.W.2d 542 (2007), *disapproved on other grounds, State v. Britt*, 293 Neb. 381, 881 N.W.2d 818 (2016). He particularly notes that the instruction in *Gutierrez* refers more generally to "'the crime'" committed rather than to the "element of intent." Brief for appellant at 15 and 16. See, also, *State v. Morrow*, 237 Neb. 653, 467 N.W.2d 63 (1991). Our analysis in this case is specific to the entirety of the instructions given in this case, and we make no comment on whether the instruction given in this case or the instruction given in another case is the preferable form of an instruction on transferred intent. Our conclusion is merely that the specific instructions given in this case, when read as a whole, correctly state the law, are not misleading, and are supported by the evidence, and there is no prejudicial error necessitating reversal. See *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016).

Because we conclude that the district court did not err when it gave instruction No. 7 over Wells' objection, we reject Wells' first assignment of error.

## 2. EVIDENCE WAS SUFFICIENT TO SUPPORT
CONVICTION FOR UNLAWFUL
DISCHARGE OF A FIREARM

[6] Wells next claims that the district court erred when it overruled his motion for a directed verdict on the count of unlawful discharge of a firearm. The record indicates that after the court overruled Wells' motion for a directed verdict, he proceeded to present evidence in his defense. A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution, and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence. *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016). Wells assigns error to the overruling of his motion for a directed verdict, but he argues the error as a challenge to the sufficiency of the evidence to support his conviction for unlawful discharge of a firearm. We consider Wells' assignment of error as a challenge to the sufficiency of the evidence, but we conclude that there was sufficient evidence to support the conviction.

Wells was charged with unlawful discharge of a firearm, in violation of Neb. Rev. Stat. § 28-1212.02 (Reissue 2016), which provides that a person is guilty of the offense if the person "unlawfully and intentionally discharges a firearm at[, inter alia,] an inhabited dwelling house, occupied building, [or] occupied motor vehicle." Wells argues that the evidence in this case showed that none of the vehicles that were hit by bullets were occupied and that there was no evidence of bullets hitting doors or windows of specific apartments in the building. He contends that the evidence showed that the shooter was aiming at the people gathered outside the building rather than at the building itself. He notes that a bullet was found inside a window of a house two blocks from the scene but he

argues there was no evidence that the shooter intended to fire at that house.

The State in its response does not rely on the bullets found either in the vehicles or in the house two blocks away as establishing this offense. Instead, the State relies on evidence that bullets were found in parts of the apartment building structure, including the rafters and supporting beams, and contends such evidence establishes that a firearm was discharged at the building. The State asserts that Wells does not dispute that the apartment building was occupied at the time the shots were fired.

The evidence noted by the State supports a finding that Wells fired shots at the apartment building and that the building was occupied at the time. The evidence was also such that the jury could reasonably infer that Wells intended to shoot at the building. The statute requires a finding that the defendant intentionally discharged a firearm at an occupied building; we do not read the statute as requiring that the firearm be aimed at a specific part of the building such as a specific apartment or at a door or window. Evidence that Wells discharged a firearm at the building, that he did so intentionally, and that the building was occupied at the time was sufficient to support the conviction.

We conclude that viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the elements of unlawful discharge of a firearm beyond a reasonable doubt. We reject this assignment of error.

### 3. Wells' Claims of Ineffective Assistance of Trial Counsel Either Are Without Merit or Cannot Be Determined Based on Record on Direct Appeal

Wells claims that his trial counsel provided ineffective assistance in various respects. He specifically claims that counsel (1) failed to object to testimony regarding prior bad acts involving assaults on Henry, (2) elicited and then failed

to object to hearsay testimony regarding Henry's fear of Wells, (3) failed to move for a mistrial based on the State's comments during rebuttal closing arguments to the effect that a witness feared Wells, and (4) failed to adequately investigate various aspects of his defense. We first set forth applicable standards and then consider each of these specific claims below.

[7] On appeal, Wells has counsel different from his trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018).

[8] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. Such a claim may be resolved when the record on direct appeal is sufficient to either affirmatively prove or rebut the merits of the claim. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

[9-13] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Cotton, supra*. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. The two prongs of this test may be addressed in either order, and the entire

ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id*.

### (a) Testimony Regarding
### Prior Bad Acts

Wells claims that he received ineffective assistance when trial counsel failed to object to testimony regarding prior bad acts involving assaults on Henry. One witness who observed the altercation between Wells and Henry testified that he said to another witness that "[Henry's] baby daddy is outside beating her up again." Another witness who observed the altercation between Wells and Henry on January 31, 2016, testified that in the summer of 2015, she had witnessed an altercation between Wells and another woman and that at that time, Wells put his hand around Henry's mouth and throat when Henry tried to hold him back from the other woman. Wells' trial counsel did not object to either witness' testimony.

Wells claims on appeal that trial counsel was ineffective for failing to object to what he asserts was inadmissible prior bad acts evidence. He argues that failure to object was deficient performance because in order for the court to admit the evidence, the State would have been required to articulate a proper purpose, other than showing Wells' propensity for violence. He argues that even if the evidence were admitted for some proper purpose, the jury should have been given an instruction limiting use of the evidence to such proper purpose. He argues that trial counsel's failure prejudiced him because the jury was able to consider the evidence as showing that he committed the charged crimes because he had a propensity for violence.

We conclude that whether or not counsel's performance was deficient in this respect, Wells was not prejudiced, because there is not a reasonable probability that the result of the proceeding would have been different if counsel had objected to this testimony. Indeed, an objection and limiting instruction might have highlighted the testimony. In any event, the testimony noted by Wells was minor in the context of all the

evidence that was presented by the State. In this regard, we specifically note that there was other properly admitted testimony regarding Wells' violent behavior toward Henry on the night of the shooting. Given all the evidence, it is not reasonably probable that the testimony noted by Wells significantly affected the jury's verdict. We reject this claim of ineffective assistance of trial counsel.

### (b) Hearsay Testimony

Wells next claims that he received ineffective assistance when his trial counsel elicited and then failed to object to hearsay testimony regarding Henry's fear of Wells. Wells' trial counsel asked one of the State's witnesses on cross-examination whether he had talked with Henry about Wells, and the witness testified that he "heard some comments about [Henry's] wanting to get away from" Wells and that Henry said "she loved him and that she was also scared of him."

On appeal, Wells contends that trial counsel was ineffective for eliciting this testimony and for failing to object to the testimony as nonresponsive and as hearsay. He argues that the line of questioning could not be justified as a reasonable strategic decision and that the error was compounded when counsel failed to ask the court to strike the testimony as nonresponsive or as hearsay. He argues he was prejudiced by this testimony because it further portrayed him as having a violent nature.

We conclude that no prejudice was shown because this testimony, like the testimony discussed above, was minor in the context of all the properly admitted evidence and that there is not a reasonable probability the result of the proceeding would have been different if trial counsel either had not elicited the testimony or had objected to it. We reject this claim of ineffective assistance of trial counsel.

### (c) Mistrial

Wells next claims that he received ineffective assistance when trial counsel failed to move for a mistrial based on the

State's comments during rebuttal closing arguments regarding a witness' alleged fear of Wells. One of the State's witnesses testified that she knew Wells and had seen him a few times with Henry. The State asked the witness whether she saw Wells in the courtroom, and she replied that she did not. In its closing argument in rebuttal, the State referred to that witness and said:

> I said do you see . . . Wells in the courtroom? What did she do? She sat there and she looked at all of you and looked over here and then she looked up and she was looking at the ceiling. I asked her if she saw . . . Wells in the courtroom. And she would - really? Was he up on the ceiling, or was she for some reason afraid of identifying him?

Wells' trial counsel objected to the prosecutor's statement. The court sustained the objection, struck the comment, and instructed the jury to disregard it. Wells' counsel did not thereafter move for a mistrial.

On appeal, Wells claims trial counsel was ineffective for failing to move for a mistrial because, given other improperly admitted evidence regarding Wells' violent nature, the court's instruction to disregard the State's comment could not "'unring' the bell." Brief for appellant at 26. He argues that his defense was prejudiced because a defense motion would have been sustained and a mistrial would have been granted. Wells relies on the proposition that a mistrial may be warranted where unfairness has been injected into a jury trial and so permeates the proceedings that no amount of admonition to the jury can remove the unfairness to a party. *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989).

We disagree with Wells' assessment that a mistrial would have been granted. The court's sustaining Wells' objection and admonishing the jury were a sufficient response to the State's comment, and we do not think the comment injected unfairness that so permeated the proceedings that admonition to the jury could not remove it. There was not a reasonable probability

that a mistrial would have been granted if counsel had moved for it, and we therefore reject this claim of ineffective assistance of counsel.

### (d) Cumulative Effect

Wells argues that even if each of the preceding alleged failures is insufficient in itself to establish ineffective assistance of counsel, the cumulative effect of all the alleged deficiencies amounts to ineffective assistance. We determined above that none of the alleged deficiencies prejudiced Wells' defense, and we likewise conclude that the cumulative effect of the alleged deficiencies did not prejudice Wells' defense.

### (e) Investigation

Finally, Wells claims that trial counsel was ineffective for failing to adequately investigate various aspects of his defense. He asserts that the record is not sufficient to review these claims of inadequate investigation on direct appeal but that he is raising the claims in order to preserve them for collateral review.

[14] In the case of an argument presented for the purpose of avoiding procedural bar to a future postconviction proceeding, appellate counsel must present a claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018). A claim insufficiently stated is no different than a claim not stated at all. *Id*.

Wells set forth the following claims in his brief:

> Wells' trial counsel provided ineffective assistance when, despite Wells' requests, he failed to independently investigate or present the following defenses, and he failed to interview, depose, or subpoena each of the following entities and potential witnesses who would have provided evidence helpful to Wells' defense:

- Trial counsel received information from . . . Henry that an acquaintance's boyfriend committed the shootings, but [counsel] failed to investigate;
- Trial counsel failed to impeach [a police witness] when he testified that . . . sight of Wells' vehicle [was lost in] the [video] recordings when Wells' vehicle, after leaving the . . . apartments following the argument with Henry, went eastbound . . . , despite trial counsel's possession of police reports in which [the police witness] and/or other officers stated that the video showed Wells traveling eastbound . . . , then Southbound . . . , a route that took Wells to . . . Council Bluffs;
- Trial counsel failed to subpoena cell phone records that would have demonstrated (1) pinging locations making it impossible for him to commit the shooting, and (2) that Wells' regular calling pattern was very similar to the calling pattern relied upon by the State to argue in support of Wells' guilt;
- Trial counsel failed to introduce into evidence a photograph of Wells at the time of the shootings to demonstrate that his hair did not match the witness' descriptions;
- Trial counsel failed to subpoena or otherwise obtain video evidence from businesses along the route from the . . . apartments to . . . Council Bluffs that would have shown he was not present at the . . . apartments at the time of the shootings;
- Trial counsel failed to consult or engage a voice recognition expert to contest the State's witnesses' claims that they recognized the voice of the shooter as Wells['] despite having very little, if any, exposure to the sound of Wells' voice;
- Trial counsel failed to consult or engage a firearms expert to evaluate and contest the testimony of the State's firearms expert, whose testimony overstated the likelihood that it was a gun like the one Wells allegedly

set on Holmes' bed that fired the bullets and casings found at the scene of the shootings;

• Trial counsel failed to move for testing of swabs taken from Wells' hands that, had they been subjected to gunshot residue testing, would have shown that Wells did not fire a gun at the time of the shootings.

Brief for appellant at 33-34.

We agree that these claims cannot be determined on direct appeal, because the record on appeal does not disclose what steps trial counsel took in regard to these avenues of investigation, what would have been found if the various actions had been taken by counsel, and whether the findings would have helped Wells' defense. We include this listing so that a district court reviewing any petition for postconviction relief that Wells might bring in the future will be able to recognize what claims were brought before this court on direct appeal.

## VI. CONCLUSION

We conclude that instruction No. 7, the transferred intent instruction, when read with all the instructions, did not misstate the law; that there was sufficient evidence to support Wells' conviction for unlawful discharge of a firearm; and that Wells' claims of ineffective assistance of trial counsel either are without merit or cannot be determined based on the record in this direct appeal. We therefore affirm Wells' convictions and sentences.

AFFIRMED.