IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. RED FEATHER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

PHILANA M. RED FEATHER, ALSO KNOWN AS MISTY BRINGS PLENTY,
ALSO KNOWN AS PHILANA ALFORD, APPELLANT.

Filed June 18, 2019.   No. A-18-732.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Leonard G. Tabor for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

Following a jury trial, Philana M. Red Feather (Philana), also known as Misty Brings Plenty and as Philana Alford, was convicted of violating a custody order. The district court for Scotts Bluff County sentenced her to 18 months' probation. On appeal, she claims there was insufficient evidence to support her conviction and she received ineffective assistance of trial counsel. We affirm.

## BACKGROUND

Philana and Dustin Santos (Dustin) are the parents of three minor children who were at issue in this case: I.S. (born 2011), M.S. (born 2009), and F.S. (born 2001). Sharen Saf, employed by the Nebraska Department of Health and Human Services (DHHS) during times relevant to this

case, worked on three investigation intakes concerning those children. On July 13, 2017, the county court for Scotts Bluff County, sitting as a juvenile court, issued three separate orders ruling that I.S., M.S., and F.S. be taken into the temporary custody of DHHS until a temporary custody hearing could be held. That same day, Saf attempted to notify Philana of the custody orders at her primary residence on Gary Street in Gering, Nebraska, and at a relative's address that was on file. Saf was not successful in making contact with Philana that day.

The next day, Saf went to the Gary Street residence at about 1 p.m.; she told the man who answered the door that she wanted to speak with Philana. A few moments later, Philana came outside and she and Saf sat in front of the home. Saf showed Philana "the paperwork and explained what it meant and attempted to engage her in the placement process." Saf remembered that at some point she realized Philana was not going to be cooperative beyond "what would be expected" (i.e., shock, grief, and overwhelmed feelings upon first notifying parent). Saf recalled asking where the children were at that time and Philana told her they were all in Rapid City, South Dakota. But based on her contact with collateral sources, Saf did not believe that to be true. When Philana was asked who the children were with, Philana answered that "she would not cooperate" with Saf and that she "would be contacting the on-track . . . office on the Pine Ridge Reservation to ask them to step in and take custody of the kids." Philana "got up" and looked to be headed back into the apartment, but at some point turned around and said "she didn't understand why it was happening." Saf "tried to explain some of the wording that was on the legal documents." Saf recalled Philana "calmed down" at that point and said she was going to call someone (Saf could not remember the name stated but assumed it to mean somebody from "the tribe"). Philana went back in the house.

Saf notified her supervisor that she was unable to take custody of the children or further the placement process. She then called local law enforcement. While waiting for law enforcement to arrive, Philana and another person "came out and got into a late model, white Lincoln [car]" and left. After law enforcement arrived, Saf "then knew that [F.S.] was at Optimal Family Preservation" (OFP) that day, located in Scottsbluff, Nebraska. Saf called Wanda Santos (Wanda), paternal grandmother to the children, with whom Saf planned on placing the children. She asked Wanda if she would meet Saf at OFP that same day. While at OFP, there was concern that F.S. would "make a run." Saf saw a "late model, white car" that matched the car she had seen Philana get into, enter the parking lot and saw F.S. "start to try to stand up." Saf said she saw the car drive through the parking lot twice. About an hour later, Saf sat with F.S. and Wanda and completed the placement of F.S. Saf did not locate M.S. until about 7 p.m. when Wanda notified Saf that M.S. was with Dustin at the Gary Street residence and that "they" (Wanda and some other individual(s)) were "en route to pick [M.S. and Dustin] up" and "would be bringing [M.S. and Dustin] back to [Wanda's] home." Saf agreed to meet them there. Saf completed the placement of M.S. at that time; Philana was not present.

Saf consistently attempted to contact Philana after July 14, 2017, but had no contact with Philana after seeing her that day. Saf was required to continue to try to call Philana with telephone numbers provided to DHHS and to locate family members who may have known of Philana's whereabouts. DHHS was "never able to physically confirm" Philana's location. As to I.S., Saf said that any time a State ward could not be located for more than 24 hours, she was required to notify the Center for Missing and Exploited Children on the national and state levels. Philana failed to produce I.S. to DHHS and a complaint was filed against her (regarding all three children) on July

21. It was not until July 25 or 26 that DHHS was made aware of I.S.' location "in a general sense" as a result of a "Facebook" video showing I.S. in a residence.

In the July 2017 county court complaint, Philana was charged with one count of violating a custody order (Count I; regarding I.S.) and two counts of attempt of violating a custody order (Count II regarding F.S.; Count III regarding M.S.). The State alleged the criminal conduct happened on or about July 13 through July 20. After a preliminary hearing, the county court found probable cause for Count I and bound the case over to the district court (Counts II and III were dismissed without prejudice on the prosecutor's motion). In November, the State filed an information in the district court, charging Philana with Counts I, II, and III as had been originally charged in county court. Thereafter, Philana filed a plea in abatement (alleging insufficient evidence for bind over) and later moved to quash the information (alleging Count I did not charge Philana with a criminal offense). The district court overruled the plea in abatement and motion to quash. Philana entered pleas of not guilty to all three charges.

Trial took place on June 11, 2018. The district court received as evidence the State's exhibits of certified copies of the county court orders granting DHHS temporary custody of I.S., M.S., and F.S. For its case-in-chief and rebuttal, the State presented Saf's testimony, much of which has been provided above. After the State presented its case-in-chief and rested, Philana's counsel moved for a directed verdict, alleging there had not been evidence of "taking or enticing from the custody of a lawful custodian." The district court overruled the motion. The defense called as witnesses Philana, Dustin, Santana Red Feather (Santana) (Santana is also Philana's and Dustin's child), and F.S.

Philana and Dustin testified that they, along with Santana and Dustin's nephew, were at the Gary Street residence when a DHHS worker visited in July 2017. Santana remembered he had answered the door. Philana said that when Saf came to the house, Saf said she wanted "to take the kids." According to Philana, F.S. was the only child in Scottsbluff that day because F.S. was on probation. Philana testified that M.S. and I.S. were in South Dakota with Philana's mother from July 4 to the last week of August; however, Philana corrected herself, saying that M.S. was in South Dakota from July 4 until the same day Saf came to the house. Philana recounted that M.S., F.S., and I.S. were not at her home. She told Saf: "the two smaller ones were in South Dakota and I would have to go get them and I didn't know what time I could have them back. And, that [F.S.] was still there [at OFP]." Both Philana and Dustin claimed to have gone to OFP together sometime that day and that they were the only individuals in the car. They both indicated that they drove through the OFP parking lot but did not get out of the car. Philana claimed that she traveled to South Dakota that day and met with M.S., I.S., and Philana's mother (who Philana said had M.S. and I.S. with her). Philana said she told M.S. and I.S. she did not have custody of them anymore and had to take them back to Wanda until she could get them back through the courts or the "tribe." She said M.S. agreed to leave so she took M.S., but I.S. wanted to stay. Philana and M.S. went back to Scottsbluff.

The jury found Philana not guilty of either count of attempted violation of a custody order (Counts II and III related to M.S. and F.S.), but found her guilty of violation of a custody order (Count I related to I.S.). On July 24, 2018, the district court sentenced Philana to a term of 18 months' probation.

ASSIGNMENTS OF ERROR

Philana claims, restated, that there was insufficient evidence to sustain her conviction and that she received ineffective assistance of trial counsel for various reasons.

STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *Id.* We determine as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

ANALYSIS

SUFFICIENCY OF EVIDENCE

Philana claims there was insufficient evidence to convict her of violating a custody order pursuant to Neb. Rev. Stat. § 28-316 (Reissue 2016). Under § 28-316(1):

> Any person, including a natural or foster parent, who, knowing that he has no legal right to do so or, heedless in that regard, takes or entices any child under the age of eighteen years from the custody of its parent having legal custody, guardian, or other lawful custodian commits the offense of violation of custody.

Violation of custody is a Class IV felony in the following circumstance: "[v]iolation of custody in contravention of an order of any district or juvenile court of this state granting the custody of a child under the age of eighteen years to any person, agency, or institution, with the intent to deprive the lawful custodian of the custody of such child." § 28-316(3). Otherwise, violation of custody is a Class II misdemeanor. The jury instructions in this case regarding the elements needed to find Philana guilty of violating a custody order (regarding I.S.) included the requirements of § 28-316(1) and (3).

There is no question there was sufficient evidence of a juvenile court order granting temporary custody of I.S. to DHHS, as that was reflected in the exhibit of the certified copy of the July 13, 2017, court order. Further, there was sufficient evidence that Philana knew about that order. Saf indicated she showed and explained the custody orders to Philana on July 14. Philana agreed at trial that she learned about the custody order that day and said she understood Saf wanted "to take the kids." And there is no doubt that I.S. was under 18 years old when the court order was entered.

Philana claims "she did not take or entice" the children "away from the State," and she "had planned to try to get the kids back legitimately through [the] tribal courts." Brief for appellant at 12. And although under a different argument section in her brief, Philana also argues that "the State needed to put up evidence that DHHS had, not just legal custody of [I.S.], but physical custody. Otherwise, just how would one take a child from the custody of a lawful custodian?" *Id.* at 16. She appears to be suggesting that since the State never had physical custody of I.S., Philana could not take or entice I.S. away from DHHS, the lawful custodian, and therefore the evidence was insufficient to convict her of violation of custody with regard to I.S. She claims, "The statute does not contemplate punishing an act of omission." We disagree with how Philana attempts to characterize the elements of the offense and the facts presented in this case.

After Saf made Philana aware of the custody orders on July 14, 2017, Philana was uncooperative. Philana told Saf that all three children were in Rapid City, something the evidence showed was certainly not true, at least as to F.S. Saf subsequently learned that F.S. was at OFP. Also, Philana would not tell Saf who the children were with nor the children's specific location. Instead, Philana threatened to not cooperate with Saf and to ask an office at the Pine Ridge Reservation to take custody of the children. Philana agreed at trial that she was trying to get the children back to the tribe and that she had talked at some point to a woman who indicated to her that she needed to obey Nebraska laws while the steps were pending for her to get the children. Philana acknowledged being with I.S. and M.S. at her mother's home. And despite knowing about the court orders and telling the children she did not have custody of them anymore and had to take them back to Wanda, she nevertheless left I.S. there. She suggests this is an "omission" not contemplated by § 28-316, and that it does not constitute her taking or enticing I.S. away from a lawful custodian. However, as noted previously, when a court order is involved, as is the case here, a violation of custody encompasses situations in which there is an intent to deprive the lawful custodian of custody of the child. See § 28-316(3). An intent to deprive a lawful custodian of custody of a child certainly implicates actions occurring before the lawful custodian has obtained actual physical custody of the child. And by her own testimony, Philana demonstrated her willful intent to deprive DHHS of its right to custody of I.S. She was aware of a court order giving DHHS custody of I.S. She told I.S. (and M.S.) she did not have custody of her children anymore and that she had to take the children to their lawful custodian (Wanda). Philana returned with M.S., but intentionally left I.S. with her mother without making any effort to notify DHHS of I.S.' location or to subsequently bring I.S. to Wanda or DHHS. A rational trier of fact could have found beyond a reasonable doubt that Philana violated the juvenile court order with the intent to deprive DHHS of custody of I.S. Having found sufficient evidence upon which the jury could find the essential elements of the crime of violating a custody order under § 28-316(1) and (3), we affirm Philana's conviction.

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Philana claims her trial counsel was ineffective. In December 2017, trial counsel was appointed to represent Philana after Philana was determined to be indigent. Philana has different counsel on appeal; the district court's order granting trial counsel's request to withdraw and appointing new counsel on appeal is contained in a supplemental transcript filed with this court.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Garcia, supra*. An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Wells*, 300 Neb. 296, 912 N.W.2d 896 (2018). To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id*.

Under those governing legal principles, we address Philana's claims that her trial counsel was ineffective in failing to (1) move for a mistrial based on a prosecutor's statement, (2) preserve the testimony of defense witnesses, and (3) ensure that defense witnesses appeared at trial to testify.

Philana asserts her trial counsel should have moved for a mistrial after the prosecutor made a statement "about [Philana's] meth use." Brief for appellant at 13. She refers to the following colloquy:

> Q. [by the State]. Okay. Now, [Philana's trial counsel] asked why Wanda doesn't like you.
>
> A. [by Philana]. Yes.
>
> Q. And, you had said maybe it's because I'm Indian; is that correct --
>
> A. Yes.
>
> Q. -- would that have been your testimony? Do you think your meth use has any --
>
> A. I don't have meth --
>
> [PHILANA'S TRIAL COUNSEL]: Objection, your Honor.
>
> A. I passed all drug tests.
>
> [PHILANA'S TRIAL COUNSEL]: Objection, your Honor.
>
> THE COURT: The objection is sustained. The jury will disregard any reference to that.

A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). Events that may require the granting of a mistrial include egregiously prejudicial

statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of incompetent matters. *Id.*

After the prosecutor's statement in dispute, Philana denied the insinuated conduct and Philana's trial counsel immediately objected (twice). The district court sustained the objection and told the jury to disregard it. Further, the jury was instructed that the following things were not evidence: statements, arguments, and questions of the parties' lawyers; objections to questions; any testimony the district court told the jury to disregard; and anything the jury may have seen or heard about the case outside the courtroom.

We cannot conclude that the prosecutor's statement was of such egregious prejudicial nature that any effect from it could not be removed by way of proper admonition or instruction to the jury, actions which were taken in this case. Also, as the State asserts, the fact that Philana was acquitted on two of three charges against her is proof that the district court's admonishment dispelled any potential prejudice to Philana. Philana's trial counsel was not ineffective for failing to move for a mistrial on the alleged basis, because the record refutes that a motion for mistrial would have been granted under the circumstances. See *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017) (as matter of law, counsel cannot be ineffective for failing to raise meritless argument).

We discuss Philana's remaining two claims of ineffective assistance of counsel together. She claims that her trial counsel was ineffective for failing to "preserve the testimony by defense witnesses" and "ensure that defense witnesses appeared at trial to testify." Brief for appellant at 13. She merely argues that the alleged errors affected the outcome of trial.

The Nebraska Supreme Court in *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014) rejected a claim that counsel was deficient for failing to call "'at least two witnesses'" that the defendant "'informed would be beneficial to his case.'" *Id.* at 133, 853 N.W.2d at 866. The Nebraska Supreme Court was concerned that the lack of specificity as to who the uncalled witnesses were would frustrate a potential postconviction court's ability to identify if a particular failure to call a witness claim was the same one that was raised on direct appeal.

The record may suggest some of the identities of those individuals Philana refers to in her claims as "defense witnesses." Brief for appellant at 13. For example, before opening argument, her trial counsel informed the district court of an individual who was a possible defense witness (trial counsel had not decided yet) but who was moved from one jail to another without trial counsel's knowledge so that trial counsel did not think he was coming to trial. However, whether Philana's claims refer to that individual or additional or different defense witnesses is unclear. Her claims are insufficiently alleged, and therefore are not preserved, due to the lack of particularity as to names or descriptions of those individuals she refers to and as to how any testimony from any of those individuals would have offered any beneficial or necessary information to her case. See *State v. Abdullah*, 289 Neb. at 133, 853 N.W.2d at 867 (vague assertion referring to "'at least two' witnesses" is "little more than a placeholder"; such allegations are not sufficiently specific to determine ineffective assistance of counsel).

## CONCLUSION

For the foregoing reasons, we affirm Philana's conviction.

AFFIRMED.