Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2018 12:11 AM CST

State of Nebraska, appellee, v. Veronica
P. Avina-Murillo, appellant.

___ N.W.2d ___

Filed September 28, 2018.    No. S-17-1302.

1. **Motions for New Trial: Time.** Where there is no factual dispute, the timeliness of a motion for new trial presents a question of law.

2. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

3. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

4. **Motions for New Trial: Verdicts: Time.** According to Neb. Rev. Stat. § 29-2103(3) (Reissue 2016), a motion for new trial based on the grounds set forth in Neb. Rev. Stat. § 29-2101(1) through (4) or (7) (Reissue 2016) shall be filed within 10 days after the verdict was rendered unless such filing is unavoidably prevented.

5. **Trial: Juries: Verdicts.** A jury's action cannot become a verdict until it is finally rendered in open court and received and accepted by the trial judge.

6. **Motions for New Trial: Verdicts: Time.** Unless one of the two statutory exceptions applies, a motion for new trial filed more than 10 days after the verdict has no effect.

7. **Motions for New Trial: Words and Phrases.** "[U]navoidably prevented" as used in Neb. Rev. Stat. § 29-2103 (Reissue 2016) refers to circumstances beyond the control of the party filing the motion for new trial.

8. **Motions for New Trial: Time: Appeal and Error.** A motion for new trial not filed in conformity with the statutory requirements as to time may not be considered by an appellate court on review.

9. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.

10. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

11. **Effectiveness of Counsel: Conflict of Interest.** The right to effective assistance of counsel entitles the accused to his or her counsel's undivided loyalties, free from conflicting interests.

12. **Effectiveness of Counsel: Proof.** Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

13. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

14. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

15. **Effectiveness of Counsel: Conflict of Interest: Presumptions.** Prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.

16. **Effectiveness of Counsel: Conflict of Interest: Presumptions: Case Disapproved.** *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018); *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015); and *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012), are disapproved to the extent they can be read to always require a presumption of prejudice where counsel's conflict of interest does not involve multiple representation.

17. **Trial: Effectiveness of Counsel: Presumptions.** In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

Christopher J. Roth, of Forney Roth, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

After being convicted by a jury and sentenced in a criminal case, Veronica P. Avina-Murillo brings this direct appeal. We cannot review the denial of her motion for new trial, because the motion was not timely. We review her ineffective assistance claims, stemming from her initial trial counsel's allegedly unethical conduct—which she characterizes as a conflict of interest. A central question is whether the *Strickland v. Washington*[1] standard applies or whether prejudice should be presumed. On these facts, we conclude that *Strickland* applies and that the record is insufficient to resolve her claims. We affirm.

## BACKGROUND

The State charged Avina-Murillo with negligent child abuse resulting in serious bodily injury based on events occurring on April 2, 2015. On that day, J.P.'s mother took 6-month-old J.P. to Avina-Murillo's house to be watched. While there, J.P. began to act abnormally. A doctor later diagnosed J.P. with abusive head trauma.

The district court conducted a jury trial. Prior to the introduction of evidence, the court sustained the State's motion to sequester all of the witnesses.

During opening statements, Avina-Murillo's counsel advised the jury that it would hear from J.P.'s parents. Counsel outlined the parents' testimonies:

---

[1] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[The parents] are going to testify that their child was not fine the morning that she was dropped off. The parents are going to tell you that they took their child to the hospital multiple times and were given different answers by different individuals at the hospitals weeks prior to April 2nd[, 2015].

. . . .

The parents will testify that . . . Avina[-Murillo] was not with the child seconds to minutes before. . . . The parents will testify that their child was not with . . . Avina[-Murillo] during that time.

The parents will testify contrary to what you just heard, actually. The parents will testify that when mother came to pick child up, child was sleeping like any other time. Mom — Mother spoke to [Avina-Murillo] for some time, 10, 15 minutes, nothing, child's sleeping. Mom then drives to house. . . . [S]he will tell you 10 to 15 minutes more driving. We're not at 30 minutes.

She will then testify that when she walked into the house, Dad wasn't there. Dad came in shortly thereafter, but some more time passed, ten minutes. They then talked about their day and about whatever else. They'll both tell you this. More time passes.

Approximately — approximately, 45 minutes to an hour later, the baby wakes up. They notice baby is not as they would expect at that point. They go to — well, to see their — wasn't the ER, but it was to see a physician before they were transferred. The evidence you will hear is not like the preview you were just given.

According to the evidence, at approximately 8 a.m. on April 2, 2015, J.P.'s mother took J.P. to Avina-Murillo's house. J.P., who is Avina-Murillo's niece, appeared to be fine. But at approximately 10 a.m., Avina-Murillo noticed that J.P. looked listless, that "her eyes did not look normal," and that "[s]he was touching her right ear quite a bit." A detective testified that Avina-Murillo told him J.P. "became lethargic, moaning, and

. . . the eyes would move in opposite directions." According to the detective, Avina-Murillo indicated to him that she knew there was something wrong with J.P. at that point in time. But she did not believe it was anything serious or grave.

According to Avina-Murillo, J.P. had exhibited similar behavior "[d]ays before." In mid-March 2015, J.P. experienced vomiting and diarrhea. J.P.'s parents took her to the emergency room two or three times, and J.P. was diagnosed with a viral illness. But during a followup visit 2 to 3 days prior to April 2, J.P. looked well and was no longer vomiting.

Avina-Murillo called J.P.'s mother to let her know that J.P. "was not acting right." She told J.P.'s mother that she believed J.P. was sick like J.P. had been earlier and that J.P. might have "gotten some air in her ear." In response, J.P.'s mother told Avina-Murillo to administer Tylenol for ear pain and to put cotton in J.P.'s ear with a little bit of "vapor rub." After Avina-Murillo did so, J.P. drank her bottle and fell asleep. After noon, J.P.'s mother arrived to take J.P. home.

At approximately 4:50 p.m., J.P.'s parents took J.P. to a doctor. At that time, J.P. was lethargic, crying, and inconsolable. She had symptoms indicating increased pressure in the brain. Intracranial pressure can cause brain damage and is a potentially life-threatening injury. A CT scan revealed a subdural hematoma, i.e., bleeding on the inside of the brain. The CT scan showed both newer and older bleeding. Newer bleeding is bleeding typically within the past 24 hours, while older bleeding is generally 48 to 72 hours old or older.

A child abuse pediatrician believed that J.P. most likely suffered a rotational or shaking injury. A different doctor testified that the injury revealed on the CT scan would have required significant force and that symptoms would have appeared "fairly shortly after onset of this type of bleeding." The defense's expert opined that it was not possible to determine the specific time that an acute subdural hematoma occurred.

During the trial, the district court made a record after an issue arose. The court recounted that there was a no contact

order prohibiting Avina-Murillo from communicating with J.P., that there was an order of sequestration as to any witnesses, and that the State had listed J.P.'s parents as witnesses. The prosecutor then stated that over the lunch hour, Avina-Murillo and her counsel were observed having lunch together with J.P. and J.P.'s parents.

Avina-Murillo's counsel offered a different version of events. He explained that at some point while he, his assistant, Avina-Murillo, and Avina-Murillo's husband were having lunch, J.P.'s parents entered the restaurant. According to counsel, "Nothing between them was discussed." But counsel stated that after talking to Avina-Murillo and in order "to essentially keep this clean," the defense would not call either parent to testify.

The court and Avina-Murillo's counsel then engaged in a colloquy regarding the voluntariness of the decision not to call the parents as witnesses. Avina-Murillo's counsel informed the court that he had spoken to Avina-Murillo "before Your Honor came out" and that the decision not to call J.P.'s parents as witnesses was Avina-Murillo's free and voluntary act.

Later, while the jury was deliberating, the court held another hearing at the State's request regarding the lunch incident. Video acquired from the restaurant contradicted what Avina-Murillo's counsel reported to the court. The video showed defense counsel, his assistant, Avina-Murillo, J.P., and J.P.'s parents all surrounding the same table, having lunch together. The State requested that sanctions be ordered against defense counsel for encouraging the violation of the no contact order and for giving the court false information.

On Friday, September 29, 2017, the jury returned a guilty verdict, and we describe in more detail below the procedures employed by the court. On that date, the court signed a "Judgment on Conviction," but this document did not impose any sentence. It was not filed until October 3.

On Wednesday, October 11, 2017, Avina-Murillo moved for a new trial. The motion alleged that irregularities in the

proceedings occurred and that Avina-Murillo was prevented from having a fair trial.

In November 2017, the court imposed a sanction against Avina-Murillo's counsel for intentionally misleading the court as to events occurring during the trial. As a sanction, the court filed a formal complaint with the Nebraska Supreme Court's Counsel for Discipline.

On December 14, 2017, Avina-Murillo, through new counsel, filed an amended motion for new trial. She alleged an irregularity in the proceedings, including the lunch incident and the decision not to call J.P.'s parents as witnesses. Avina-Murillo claimed that her right to due process was violated when she was unable to present an adequate defense to the jury.

The court held a hearing on the motion and received several affidavits. Avina-Murillo stated in an affidavit that after her counsel had a meeting with the judge and the prosecutor, her counsel told her that J.P.'s parents were "no longer able to testify." She stated that when, back in the courtroom, the court asked her counsel about J.P.'s parents' testifying, it was her understanding J.P.'s parents were unable to testify and she was unaware she had the choice to call them as witnesses. She stated that she would have called the parents as witnesses if she had known she had the option, because she believed their testimonies would have helped her case.

The court also received affidavits from J.P.'s parents that were nearly identical in substance. J.P.'s parents stated that Avina-Murillo's counsel told them that there would be "problems or a big scandal" if they took the witness stand and that "the best thing to do would be to not take the witness stand." They stated that their testimonies would have been consistent with prior statements to police and the prosecutor. They would have testified that J.P. was vomiting and very sleepy in the 7 days before April 2, 2015. They "would have testified about the different statements from the doctors regarding the cause of [J.P.'s] conditions and medical issues, which includes the fact that two doctors had told [them]

that [J.P.'s] issues were not caused by a shaking injury." They would have testified that due to J.P.'s blood condition, any shaking of her would have caused bruising where the shaker grabbed her. Further, J.P.'s parents would have testified that they did not believe Avina-Murillo was responsible for J.P.'s condition.

The court denied Avina-Murillo's motion for new trial. The court stated that it did not see any exculpatory evidence in the affidavits and that information in the affidavits "appear[ed] to be evidence that was presented . . . at the trial." The court then proceeded to sentencing and imposed a sentence of probation.

Through the same counsel who filed the amended motion for new trial, Avina-Murillo timely appealed. We granted her petition to bypass review by the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Avina-Murillo assigns that for several reasons, the district court erred in denying her motion for new trial. She also asserts that her trial counsel was ineffective when he (1) decided not to call J.P.'s parents as witnesses, (2) failed to move for a mistrial, (3) failed to withdraw due to an ethical conflict of interest, and (4) failed to consult with Avina-Murillo about those decisions.

## STANDARD OF REVIEW

[1] We have often said that in a criminal case, a motion for new trial is addressed to the discretion of the trial court, and that unless an abuse of discretion is shown, the trial court's determination will not be disturbed.[2] But although we have not said so before in so many words, where there is no factual dispute, the timeliness of a motion for new trial presents a question of law.[3]

---

[2] See, e.g., *State v. Hairston*, 298 Neb. 251, 904 N.W.2d 1 (2017).

[3] See, *State v. Thompson*, 244 Neb. 375, 507 N.W.2d 253 (1993); *Parker v. State*, 164 Neb. 614, 83 N.W.2d 347 (1957).

[2,3] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.[4] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[5]

## ANALYSIS

### Motion for New Trial

Twelve days after the jury returned its verdict, Avina-Murillo filed a motion for new trial. Some 2 months after that, she filed an amended motion. As the State correctly argues, neither motion was timely.

[4] Statutes set forth the grounds and time limits for filing a motion for new trial.[6] Avina-Murillo's original motion for new trial alleged grounds under § 29-2101(1) and (4), and her amended motion set forth grounds under § 29-2101(1) and (7). According to § 29-2103(3), a motion for new trial based on the grounds set forth in § 29-2101(1) through (4) or (7) "shall be filed within ten days after the verdict was rendered unless such filing is unavoidably prevented . . . ." This court has long held that § 29-2103 by its terms is mandatory.[7]

[5] The time limitation for filing a motion for new trial runs from rendition of the verdict. A statute provides that when the jury has agreed upon its verdict, the jury must be "conducted into court" and may be polled at the request of either the prosecuting attorney or the defendant before the verdict is accepted.[8] A jury's action cannot become a verdict until it is

---

[4] *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018).

[5] *Id.*

[6] See Neb. Rev. Stat. §§ 29-2101 and 29-2103 (Reissue 2016).

[7] *State v. Thompson, supra* note 3.

[8] Neb. Rev. Stat. § 29-2024 (Reissue 2016).

finally rendered in open court and received and accepted by the trial judge.[9]

With that understanding, we summarize what happened. The record shows that on September 29, 2017, the jury returned to the courtroom and responded "[y]es" to the court's question whether it had reached a verdict. The court clerk read the verdict in open court. After reading the verdict, the clerk asked if it was the jury's "unanimous, final verdict." The foreperson responded, "Yes." The court then asked if there was any request to poll the jury. There was not. The court sent the jury out and stated that it "will accept the verdict of the jury and find and enter a judgment of guilty against [Avina-Murillo] in this matter." It added, "The Court will order [Avina-Murillo] to appear for a sentencing" and specified the date and time. The court announced the revocation of Avina-Murillo's bond and placed her in the sheriff's custody.

As this summary demonstrates, the verdict was finally rendered in open court and received and accepted by the trial judge on September 29, 2017. On appeal, Avina-Murillo makes two arguments to avoid this conclusion.

First, she argues that the verdict was not accepted until the filing of the "Judgment on Conviction" on October 3, 2017. But despite the court's use of the word "will," it is clear that the jury rendered its verdict and the court accepted the verdict in open court on September 29. On that date, the court also completed and signed the "Judgment on Conviction."

Avina-Murillo's reliance on the filing date is misplaced. Technically, the document was not a "judgment." We have held that the judgment in a criminal case is the sentence.[10] The document here did not impose a sentence. It merely memorialized what had already transpired. The delay in filing of the document did not affect the legal significance of the events that already had occurred in open court.

---

[9] *State v. Combs*, 297 Neb. 422, 900 N.W.2d 473 (2017).

[10] See *id.*

[6] Consequently, Avina-Murillo did not file her initial motion within 10 days after the verdict was rendered. Unless one of the two statutory exceptions applies, a motion for new trial filed more than 10 days after the verdict has no effect.[11]

Second, Avina-Murillo attempts to invoke one of the exceptions. She urges us to find that she was "unavoidably delayed in her filing"[12] under § 29-2103(3). It does not appear from the record that the district court considered the timeliness of her motion. We note that neither motion claimed that Avina-Murillo was "unavoidably prevented" from filing it within 10 days after the verdict was rendered.[13]

[7] "[U]navoidably prevented" as used in § 29-2103 refers to circumstances beyond the control of the party filing the motion for new trial.[14] The law requires diligence on the part of clients and their attorneys, and the mere neglect of either will not entitle a party to relief on that ground.[15]

Nothing in the record would allow us to find that Avina-Murillo was unavoidably prevented from filing her motion on time. Thus, her attempt to invoke the statutory exception fails.

[8] Because both of her arguments fail, we cannot address the district court's ruling on the motion. A motion for new trial not filed in conformity with the statutory requirements as to time may not be considered by an appellate court on review.[16] Even where a trial court has considered the merits of an untimely motion for new trial, we have stated that such a motion was not properly before us.[17] Because Avina-Murillo

---

[11] See *State v. McCormick and Hall*, 246 Neb. 271, 518 N.W.2d 133 (1994), *abrogated in part on other grounds, State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002).

[12] Reply brief for appellant at 2.

[13] See § 29-2103(3).

[14] *State v. Thompson*, 246 Neb. 752, 523 N.W.2d 246 (1994).

[15] *State v. Hawkman*, 198 Neb. 578, 254 N.W.2d 90 (1977).

[16] *State v. Thompson, supra* note 3.

[17] See *id.*

did not file a timely motion for new trial, we do not consider her assignments of error relating to the overruling of the motion.

### Ineffective Assistance of Counsel

Through different counsel, Avina-Murillo argues that in several respects, her initial trial counsel was ineffective. Her arguments all relate to the lunch incident and its aftermath.

[9,10] The law requires her to assert these issues now, but we may not be able to decide them on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.[18] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.[19]

[11] Avina-Murillo's claims are premised on her trial counsel's having a conflict of interest. The right to effective assistance of counsel entitles the accused to his or her counsel's undivided loyalties, free from conflicting interests.[20] Specifically, she claims that counsel performed deficiently when he (1) decided not to call J.P.'s parents as witnesses after informing the jury of those witnesses' testimonies during opening statements, (2) failed to move for a mistrial, (3) failed to withdraw due to an ethical conflict of interest, and (4) failed to consult with Avina-Murillo about those decisions. According to Avina-Murillo, her counsel was placed in a situation in which he had divided loyalties and had to choose between loyalty to himself and loyalty to his client.

---

[18] *State v. Vanness, supra* note 4.

[19] *Id.*

[20] *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018).

[12-14] Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland*,[21] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[22] To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[23] To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.[24] The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.[25]

[15] But the *Strickland* Court recognized that prejudice is presumed in some situations. "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance."[26] In such situations, prejudice "is so likely that case-by-case inquiry into prejudice is not worth the cost" and the impairments to the right to counsel "are easy to identify."[27] The *Strickland* Court then cited to *Cuyler v. Sullivan*[28] and stated that "a similar, though more limited, presumption of prejudice" applies "when counsel is burdened by

---

[21] *Strickland v. Washington, supra* note 1.

[22] *State v. Cotton, supra* note 20.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Strickland v. Washington, supra* note 1, 466 U.S. at 692.

[27] *Id.*

[28] *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

an actual conflict of interest."[29] In that situation, "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests."[30] The *Strickland* Court specified that "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"[31]

At this juncture, it is necessary to recognize that there are several types of conflicts of interest that could arise. An attorney may concurrently represent clients with conflicting interests (multiple representation). An attorney could successively represent clients with conflicting interests (successive representation). Or the interests of the client may conflict with the attorney's personal interests (personal interest conflict). "Not all conflicts of interest that affect the attorney's 'duty of loyalty' have the same consequences, and they are not all suited to *Cuyler*'s stringent rule."[32] Multiple representation conflicts tend to present the most problems, because whatever path the attorney takes will likely harm the interests of at least one client. On the other hand, when the attorney has a personal conflict, the attorney can still fulfill his or her duty of loyalty to the client, although doing so may be to the detriment of the attorney's personal interest.

Where a conflict of interest involves multiple representation, the U.S. Supreme Court has provided clear guidance. Automatic reversal is appropriate where defense counsel is improperly forced to represent codefendants over counsel's timely objection.[33] The Court held in *Cuyler* that where there is no timely objection, "a defendant who shows that a conflict

---

[29] *Strickland v. Washington, supra* note 1, 466 U.S. at 692.

[30] *Id.*

[31] *Id.*

[32] *Beets v. Scott*, 65 F.3d 1258, 1269 (5th Cir. 1995).

[33] See *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978).

of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."[34] The Court later explained that the purpose of the *Cuyler* exception is "to apply needed prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel."[35]

But the law has evolved regarding whether the presumed prejudice standard should apply to other conflict of interest situations. The Fifth Circuit concluded that the presumed prejudice standard applied only to multiple representation conflicts and that a court should apply the *Strickland* standard when the conflict involves counsel's self-interest.[36] Subsequently, in dicta contained in *Mickens v. Taylor*,[37] the U.S. Supreme Court observed that federal courts of appeals had applied *Cuyler* "'unblinkingly' to 'all kinds of alleged attorney ethical conflicts.'" But the *Mickens* Court cautioned that "the language of [*Cuyler*] itself does not clearly establish, or indeed even support, such expansive application."[38] In *Mickens*, the Court explicitly left open whether *Cuyler* should be extended to cases of successive representation.

Our own case law post-*Mickens* does not reveal a clear standard for ineffective assistance of counsel claims involving conflicts of interest. In 2006, we discussed *Mickens* and stated that "prejudice will be presumed only if the conflict has significantly affected counsel's performance, thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown."[39] In the 2006 case, the alleged conflict involved

---

[34] *Cuyler v. Sullivan, supra* note 28, 446 U.S. at 349-50.

[35] *Mickens v. Taylor*, 535 U.S. 162, 176, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). See *Strickland v. Washington, supra* note 1.

[36] See *Beets v. Scott, supra* note 32.

[37] *Mickens v. Taylor, supra* note 35, 535 U.S. at 174, quoting *Beets v. Scott, supra* note 32.

[38] *Mickens v. Taylor, supra* note 35, 535 U.S. at 175.

[39] *State v. Aldaco*, 271 Neb. 160, 167-68, 710 N.W.2d 101, 108 (2006).

defense counsel's prior representation of the victim's brother (a successive representation) and we determined on direct appeal that there was no actual conflict nor any basis for a presumption of prejudice. Two years later, in a postconviction appeal, we were confronted with a claim that appellate counsel had a conflict due to a close personal relationship with trial counsel and consequently failed to argue that trial counsel provided ineffective assistance.[40] We stated: "Ordinarily, such a conflict arises when an attorney is representing multiple defendants. This court, however, has previously defined 'actual conflict' broadly. The term therefore encompasses any situation in which a defense attorney faces divided loyalties such that regard for one duty tends to lead to disregard of another."[41] We resolved the issue by determining that the defendant failed to show the trial court erred in concluding that the two attorneys had no personal relationship.

Two of our decisions, both involving postconviction proceedings, warrant more indepth discussion. In *State v. Edwards*,[42] Christopher A. Edwards alleged, among other things, that his counsel failed to provide a meaningful defense due to his friendship with a material prosecution witness. After Edwards' trial, his counsel represented this witness in a criminal prosecution. We stated the following with respect to *Mickens*:

> [T]he U.S. Supreme Court stated that the "actual conflict" inquiry is not separate from a performance inquiry: "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Thus, we have stated that when an actual conflict exists, there is no need to show that the conflict resulted in actual prejudice to the defendant (meaning no need to show the outcome of the proceeding was affected). But the substantive analysis is the same. If the

---

[40] See *State v. Jackson*, 275 Neb. 434, 747 N.W.2d 418 (2008).

[41] *Id.* at 442, 747 N.W.2d at 429.

[42] *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

defendant shows that his or her defense counsel faced a situation in which conflicting loyalties pointed in opposite directions and that his or her counsel acted for the other client's interests and against the defendant's interests, prejudice is presumed.[43]

We proceeded to discuss conflicts of interest resulting from successive representation. Ultimately, we reversed the decision and remanded the cause for an evidentiary hearing on the issue.

Upon our remand in *Edwards*, the trial court held an evidentiary hearing.[44] During the hearing, counsel denied a friendship with the witness. Counsel testified that before he agreed to represent the witness, he researched whether the representation would cause a conflict of interest. He was advised that such representation would not affect Edwards' case, even though there were still briefs to be written for Edwards' direct appeal. The trial court determined that counsel did not have an actual conflict of interest. Upon Edwards' appeal, we stated that "[t]he record simply does not support a finding that [counsel] had such a loyalty to [the witness] that would have tempted him at trial to act against Edwards' interests."[45] We agreed that counsel did not have an actual conflict of interest at the time he served as Edwards' trial counsel.

We addressed a personal interest conflict in *State v. Armstrong*.[46] We began by stating that counsel performed deficiently and that "[d]efense counsel's interest in avoiding criminal or ethical sanctions was in conflict with [the defendant's] interest in presenting the strongest defense possible."[47] With regard to the prejudice component, we first set forth the *Strickland* standard of "a reasonable probability that but for counsel's deficient performance, the result of the proceeding

---

[43] *Id.* at 406-07, 821 N.W.2d at 701.

[44] See *State v. Edwards*, 294 Neb. 1, 880 N.W.2d 642 (2016).

[45] *Id.* at 22, 880 N.W.2d at 655.

[46] *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015).

[47] *Id.* at 1015, 863 N.W.2d at 467.

would have been different."[48] Next, we stated that prejudice is presumed if the defendant shows conflicting loyalties pointed in opposite directions and counsel acted against the defendant's interests. We then stated, "[E]ven if we do not apply such presumption, we easily conclude that actual prejudice resulted from counsel's deficient performance."[49] Ultimately, we applied *Strickland* to resolve the prejudice component, stating: "Under the totality of the circumstances presented at trial, the decision would reasonably likely have been different but for counsel's error leading to the absence of the testimony of [the defendant's] wife and son-in-law."[50] In the conclusion portion of our opinion, we stated that the defendant "met both prongs of his burden under *Strickland*."[51]

Two of our recent cases presented alleged conflicts of interest raised on direct appeal. In the context of a multiple representation, we determined that the record was insufficient to review the claim.[52] In a case involving a personal interest conflict, we stated that "[i]f the defendant shows that his or her defense counsel faced a situation in which conflicting loyalties pointed in opposite directions and that his or her counsel acted for the other client's interests or the counsel's own personal interests and against the defendant's interests, prejudice is presumed."[53] But in that case, we found that the defendant validly waived the conflict of interest.

[16] The State seeks guidance as to the applicable standard, but we decline to adopt a bright-line rule as to whether *Cuyler* or *Strickland* applies to personal interest conflicts.[54]

---

[48] *Id.* at 1016, 863 N.W.2d at 467.

[49] *Id.* at 1016, 863 N.W.2d at 468.

[50] *Id.* at 1020, 863 N.W.2d at 470.

[51] *Id.*

[52] See *State v. Vanness, supra* note 4.

[53] *State v. Cotton, supra* note 20, 299 Neb. at 674-75, 910 N.W.2d at 128.

[54] See, *Strickland v. Washington, supra* note 1; *Cuyler v. Sullivan, supra* note 28.

In most such cases, the more burdensome *Strickland* standard should apply. The Fifth Circuit explained that "[b]ecause the scope of the duty of loyalty with respect to attorney self-interest is inherently vague and overlaps with professional effectiveness, *Strickland* ought to set the constitutional norm of adequate representation."[55] But we can envision a situation in which the conflict is so serious that the defendant should be relieved of the obligation to show a reasonable probability that the outcome of the trial would have been different. Thus, we think the better approach is to determine the appropriate standard on a case-by-case basis. We disapprove of *State v. Cotton*,[56] *State v. Armstrong*,[57] and *State v. Edwards*[58] to the extent they can be read to always require a presumption of prejudice where counsel's conflict of interest does not involve multiple representation.

Because the alleged personal interest conflict here does not rise to the level of demanding a presumption of prejudice, we apply the *Strickland* standard. As we recited above, in order to prevail under *Strickland*, Avina-Murillo must show that her counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law and a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[59]

Both parties contend, for different reasons, that the record on direct appeal is sufficient to resolve Avina-Murillo's ineffective assistance of counsel claims. They direct us to affidavits received during the hearing on the motion for new trial. During oral arguments, the State conceded that such evidence can and should be considered for purposes of the ineffective

---

[55] *Beets v. Scott, supra* note 32, 65 F.3d at 1271.

[56] *State v. Cotton, supra* note 20.

[57] *State v. Armstrong, supra* note 46.

[58] *State v. Edwards, supra* note 42.

[59] See *State v. Cotton, supra* note 20.

assistance of counsel claims, regardless of the timeliness of the motion for new trial.

But in considering this evidence, we are mindful that it was not tested in an adversarial way. Although the court received the affidavits, it did not conduct an evidentiary hearing. Thus, the State did not have a chance to cross-examine the affiants about their statements. And the affidavits merely presented Avina-Murillo's and the parents' unchallenged version of events. Conspicuously absent is counsel's side of the story. Thus, we cannot say that the undisputed facts are sufficient to conclusively determine whether Avina-Murillo's initial trial counsel did or did not provide effective assistance. Too much depends on speculation, assumptions, inferences, or untested affidavits. We will not presume prejudice based on mere speculation.[60]

[17] Rarely do we find on direct appeal that a defendant established a claim of ineffective assistance of trial counsel. In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.[61] On only two occasions have we, on direct appeal, found that trial counsel's actions could not be justified as a part of any plausible trial strategy.[62] In *State v. Rocha*,[63] where counsel failed to move to sever a sexual assault charge from child abuse charges, we stated that we could conceive of no strategic reason for counsel's failure to act and that such failure undermined our confidence in the outcome of the trial. In *State v. Faust*,[64] we concluded that counsel provided ineffective assistance "by failing to object to a significant amount

---

[60] *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010).

[61] *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017).

[62] See, *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013); *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003), *disapproved on other grounds*, *State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

[63] *State v. Rocha, supra* note 62.

[64] *State v. Faust, supra* note 62, 265 Neb. at 870, 660 N.W.2d at 868.

of improper negative character evidence." Because the jury was presented with inadmissible evidence that was inflammatory and had an increased potential for jury confusion, we could not ascertain "whether the defendant was convicted for committing the elements of the crime charged or whether the jury determined guilt because the defendant was a generally aggressive or violent person and, thus, more likely to commit the crime."[65] But finding ineffective assistance on direct appeal is the exceptional case, and for good reason. Failing to call a witness promised during opening statement simply does not reach that level. There are many legitimate reasons why this could occur. Although the record suggests that a personal interest conflict may have been involved, it does not conclusively establish cause and effect.

Based on the record before us, we cannot conclusively determine as a matter of law that counsel's alleged deficient performance did or did not cause Avina-Murillo prejudice. As noted, there is a strong presumption that counsel acted reasonably, and we decline to speculate as to the trial strategy, if any, behind counsel's decisions.

Further, we disagree with the State that evidence of guilt was overwhelming. We recognize that because this case involved a negligent child abuse charge, the State needed to prove beyond a reasonable doubt only that Avina-Murillo negligently caused or permitted J.P. to be (1) placed in a situation that endangered her life or physical or mental health, (2) cruelly punished, or (3) deprived of necessary care.[66] But we cannot say conclusively that the outcome would have been the same had the jury heard from J.P.'s parents, as it had been told it would. Avina-Murillo's other allegations of ineffectiveness—counsel's failure to move for a mistrial, move to withdraw, or consult with Avina-Murillo regarding the actions about which she complains—are all premised on the same alleged conflict as

---

[65] *Id.* at 871, 660 N.W.2d at 868-69.

[66] See Neb. Rev. Stat. § 28-707(1) (Cum. Supp. 2014).

the decision not to call the parents as witnesses. The claims rise or fall together.

Ultimately, we are missing necessary facts to conclusively determine whether counsel performed deficiently and whether there is a reasonable probability that absent such deficient performance, the result of the proceeding would have been different. We conclude that the record is insufficient on direct appeal to resolve Avina-Murillo's claims of ineffective assistance of counsel.

## CONCLUSION

We do not consider Avina-Murillo's arguments regarding the overruling of her motion for new trial, because the motion was untimely. Applying the *Strickland* standard, we determine that the record is insufficient to resolve Avina-Murillo's claims that she received ineffective assistance of counsel due to her initial trial counsel's personal interest conflict. We therefore affirm Avina-Murillo's conviction and sentence.

AFFIRMED.

PAPIK, J., not participating.