IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BUSCH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JUSTIN D. BUSCH, APPELLANT.

Filed January 15, 2019.    No. A-17-996.

Appeal from the District Court for Johnson County: RICKY A. SCHREINER, Judge. Affirmed.

Gregory C. Scaglione and Michele E. Young, of Koley Jessen, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

INTRODUCTION

Justin D. Busch appeals from his plea-based conviction in the Johnson County District Court for arson in the first degree. He was sentenced to 30 to 50 years' imprisonment to run consecutive to his other sentences currently being served. Busch challenges the district court's denial of his plea in abatement and he contends his sentence is excessive. He also claims his trial counsel was ineffective. We affirm his conviction and sentence.

BACKGROUND

On July 8, 2016, the State charged Busch with four counts of arson in the first degree, each a Class II felony, related to events occurring on May 10, 2015. At a preliminary hearing in the county court for Johnson County, the State called a Nebraska State Patrol criminal investigator who said he was assigned as the lead investigator for the May 10 riot at Tecumseh State

Correctional Institution (TSCI), and he testified about fires alleged to have been started by Busch during that riot. At the conclusion of the hearing, the county court was satisfied there was probable cause to believe that all charged counts were committed and that Busch was the person who committed those offenses; the case was bound over to the Johnson County District Court.

After an information was filed in the district court, Busch filed a "Plea in Abatement" pursuant to Neb. Rev. Stat. § 29-1809 (Reissue 2016). Busch alleged that there was "a defect in the record which [was] shown by facts extrinsic thereto" and "insufficient evidence adduced at the preliminary hearing to support a finding of probable cause to believe that a crime was committed or that [he] committed a crime." In support, Busch incorporated by reference the transcript of the preliminary hearing before the county court. Busch requested that the district court issue an order to abate the proceedings and dismiss the action.

At the hearing on his plea in abatement in October 2016, Busch argued that the evidence would not support four separate counts of arson in the first degree, understanding the statutory definition of arson to be "not that a fire is set but that a building or property within that building is damaged by fire." He claimed that because "all of these fires occurred within the same building," then "it would be one count of arson for damaging property within that one building or damaging that building itself." But the State contended that the damage to property was caused by four separate fires started by Busch and that there was evidence the fires were "sufficiently far apart in time [allegedly at least an hour between each fire's start] and location [2 separate doors, a table, and a laundry cart] as to be separate counts" and that Busch "admitted to setting multiple fires." After taking the matter under advisement, the district court denied Busch's plea in abatement. It summarized the testimony presented at the preliminary hearing before the county court and found that the county court's finding of probable cause was supported by the evidence. The district court concluded:

> This [district] court is aware of [Busch's] position that the charges should be for one arson and not four in housing unit 2. The [district] court finds that it will depend on the evidence[] ultimately submitted by the State at trial. If the State's evidence reflects that it was one arson and not four it will be the [district] court's ruling at the close of the State's case and not before.

Busch initially pled not guilty to all four counts in the State's information. At a plea hearing on July 27, 2017, however, the State informed the district court of a plea agreement reached with Busch for a guilty or no contest plea to one count of arson in the first degree in exchange for the State's dismissal of the other three counts of arson in the first degree, along with an agreement not to enhance the charge as a habitual criminal offense. Busch and his trial counsel separately agreed that this was their understanding of the plea agreement. The district court found beyond a reasonable doubt that Busch understood his rights and waived them freely, voluntarily, knowingly, and intelligently. It accepted Busch's waiver and permitted withdrawal of the previous pleas of not guilty. Thereafter, Busch pled no contest to one count of arson in the first degree. The State moved to dismiss the remaining counts of the information (its amended information reflecting the same was filed that day).

The factual basis for Busch's plea of no contest, as provided by the State, was as follows. On May 10, 2015, there was a riot at TSCI resulting in "extensive damages" to the prison structure

and property within it by means of fire. Investigators from the Nebraska State Patrol and the Nebraska State Fire Marshal investigated the course of the fires. The investigation of the fire marshal's office found a vestibule door in "Unit 2" had been burned to the extent that the window in the door was burned out allowing access to both sides of the door and a door to the "2C Gallery" burned in a similar fashion, allowing access through an otherwise locked secured door. Additionally, a laundry cart and property within it, as well as a table on which property was located, had been burned. They found that for each of the fires, there was no evidence of accidental means for electrical, mechanical, chemical, or other natural source for the heat or ignition of those fires. Near the area of the vestibule door, investigators found make-shift torches made of broom handles and towels, which were materials that would have been accessible to inmates on May 10.

Further, TSCI staff reviewed a video recording of the area near the vestibule door and were able to identify Busch, an inmate housed there at the time, among those responsible for starting the fire to the vestibule door and the remaining fires to the other door, the table, and the laundry cart. Two investigators from the fire marshal's office made contact with Busch on May 14 and May 16, 2015, during which Busch stated to one of the investigators that he had started fires using a battery and foil and a mop handle wrapped in a sheet. He said he had burned the doors in an attempt to try to "get at staff members" and "claim[ed] responsibility for all of [the] fires to the four locations within the prison." During the events of May 10, the prison was occupied, containing inmates other than Busch; all events took place in Johnson County, Nebraska.

Upon these facts, the district court found Busch guilty beyond a reasonable doubt. A sentencing hearing was held on September 14, 2017. The district court sentenced Busch to 30 to 50 years' imprisonment to run consecutive to all his other sentences currently being served. Busch appeals.

## ASSIGNMENTS OF ERROR

Busch claims, restated and reordered, that the district court erred by (1) denying his plea in abatement and finding there was sufficient evidence for the State to charge him with four counts of arson and (2) imposing an excessive sentence. He also claims ineffective assistance of trial counsel.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Wells*, 300 Neb. 296, 912 N.W.2d 896 (2018). We determine as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## ANALYSIS

### PLEA IN ABATEMENT AND SUFFICIENCY OF EVIDENCE

Busch claims the district court erred when it did not dismiss "three extraneous arson charges at the Plea in Abatement stage, which later impacted [his] ability to effectively plea bargain." Brief for appellant at 8. He contends that if those other charges were dismissed, he "could have focused his plea efforts on obtaining a recommendation from the State as to the number of years for his sentence," but instead "had to negotiate to get the three charges dismissed, using up all of his bargaining capital there." *Id.* at 10.

In Nebraska, a plea in abatement "may be made when there is a defect in the record which is shown by facts extrinsic thereto." See § 29-1809. A plea in abatement is used to challenge the sufficiency of the evidence at a preliminary hearing; to resist a challenge by a plea in abatement, the evidence received need show only that a crime was committed and that there is probable cause to believe that the accused committed it. See *State v. Chauncey*, 295 Neb. 453, 890 N.W.2d 453 (2017). As mentioned previously, the district court found that the county court's finding of probable cause at a preliminary hearing was supported by the evidence presented by the State. Following this determination, Busch subsequently entered a no contest plea.

The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018). The only exceptions are for the defenses of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction. *Id*. See, also, Neb. Rev. Stat. § 29-1812 (Reissue 2016) ("accused shall be taken to have waived all defects which may be excepted to by a motion to quash, or a plea in abatement, by demurring to an indictment or pleading in bar or the general issue"). Busch's voluntary entry of a no contest plea waived any alleged defects raised by his plea in abatement, and thus, cannot be directly challenged on appeal, unless, for example, the charging information failed to allege an essential element of a crime, or a defect in the information is of such a fundamental character as to make the indictment wholly invalid. See *State v. Golgert*, 223 Neb. 950, 395 N.W.2d 520 (1986). Busch does not assert such claims here; rather, he concedes that "a plea will often waive any previous errors in the proceedings," but he maintains that such a waiver would not have resulted but for his trial counsel's "improper advice" which allegedly prompted his plea. Brief for appellant at 10. This argument appears to attack the effectiveness of trial counsel rather than Busch's assigned error regarding the district court's denial of Busch's plea in abatement. As noted, any such error by the district court was waived by the entry of Busch's no contest plea. And although Busch correctly asserts in his reply brief that a voluntary plea does not waive a claim of ineffective assistance of counsel, we note that Busch did not assign error to this particular issue in the context of a claim for ineffective assistance of trial counsel in his initial brief. To the extent Busch seeks to supplement his initial claims of ineffective assistance of counsel, it cannot be done in a reply brief. See *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018) (assignment of error raised for first time in reply brief is untimely and will not be considered by court).

Busch claims his sentence is excessive. Busch was convicted of arson in the first degree, a Class II felony, under Neb. Rev. Stat. § 28-502 (Reissue 2016). A Class II felony is punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Supp. 2017). The district court sentenced Busch to serve a term of 30 to 50 years' imprisonment consecutively to previous sentences currently being served. Busch's conviction is within the statutory limits and will be upheld in the absence of an abuse of discretion of the district court. See *State v. Dill, supra.*

When imposing a sentence, the sentencing court should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* It is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes. *Id.*

A review of the record and presentence investigation report (PSR) show Busch was 24 years old at the time of his offense and 26 years old at the time of sentencing. As part of the PSR, a Level of Service/Case Management Inventory (LS/CMI) was conducted to assess the risk Busch presented to the community and his risk to recidivate. The LS/CMI shows scores of "Very Low risk/need" in the areas of education/employment, family/marital history, and leisure/recreation, and "Low risk/need" for alcohol/drug problems. However, the LS/CMI shows Busch scored "Very High risk/need" for companions and he scored "High risk/need" for procriminal attitude/orientation, antisocial pattern, and criminal history.

Busch completed high school (he was suspended one time for a fight; otherwise he got along with others) and planned to attend college. He had worked as a porter in prison since his incarceration in 2011, and he got along with those with whom he worked. He had a positive relationship with his father and mother (his adoptive parents) and his siblings. The PSR states Busch indicated he was "somewhat in a relationship" with a woman he had been talking with since 2012; he denied ever being married or having children. Busch enjoys several recreational activities and attends "a bible study group, AA, and religion." On a Simple Screening Instrument (assessment tool of alcohol and drug usage history within a prior 6-month timeframe), Busch scored a minimal risk of chemical abuse.

In the PSR, Busch's statement read, "I take 100% ownership for my actions, but I truly believe, had I been treated for my mental [illnesses adequately], I would have never put myself in this [position] . . . I just made a bad choice and I am truly sorry." The PSR states Busch was in the "contemplation stage of change" about his offense and that although he acknowledged his actions were wrong, he continued to "rationalize his actions, stating that he was trying to help the other inmates get inside so that they were safe."

According to the PSR, Busch's convictions include: expired operator's license in December 2009; minor in possession in June 2011; tampering with witness/informant/juror in

August 2011; robbery (2 counts) and possession or receipt of stolen firearm in August 2011; shoplifting, false information, and fail to appear or comply with citation in August 2011; and robbery (2 counts) and use of a firearm to commit a felony (2 counts) in September 2011. As a result of his convictions in August and September 2011, he was sentenced to multiple terms of incarceration that were still being served.

At the sentencing hearing, the State argued that Busch's procriminal attitude was shown when he "chose to begin lighting fires during the May 10th incident at [TSCI]." The State listed the following resulting effects of the riot that day: (1) "significant damages" to the prison property, (2) endangerment of health of other inmates and staff members at the facility, (3) creation of "chaos in an already chaotic situation" that prevented staff from being able to lockdown inmates in a timely manner, and (4) ability of "inmate access for part of the prisoners where inmates were supposed to be into parts of the prison where inmates were not supposed to be"; "inmates were separated for protection of some of the other inmates, including two inmates who died as a result of the riots."

The district court stated that it did not hold Busch responsible for "those two deaths," but that Busch nevertheless "created an environment that promoted an attitude amongst the rest of the inmates" and that "[i]t wasn't just a simple decision" but "a number of decisions over a long period of time." The court said two stories had been given and that one story was that Busch "wanted to open those doors or gain access to the yard so other inmates could get out of the yard and not be shot." However, Busch also had "told law enforcement that [he] burned those doors open so [he] could get at those people, those people being the Department of Corrections officers . . . public service employees." The district court said Busch was a "major player in a very serious event." The court had reviewed the PSR and emphasized that for a young man, Busch had a "lengthy criminal history" of "violent offenses."

The State requested "a lengthy term of incarceration to run consecutive to his current term," which was projected to end in 2028. The district court agreed with the State's recommendation. The district court did note "some change in behavior," but also noted that Busch had received multiple misconduct reports and that he was in segregation because of a fight at the time of the presentence investigation interview (which was August 31, 2017, about a week prior to the sentencing hearing).

On appeal, Busch submits that his sentence was off by "three to five decades." Reply brief for appellant at 5. He contends that proper weight was not given "to reports that [his] behavior had moderated, that he was denied access to the proper medications for his diagnosed mental health issues, and [that the district court] failed to fully consider the issues raised by Factor A [a sealed record]." *Id.* at 6. He states that he suffered from depression, bipolar disorder, impulsivity, "ADHD," "PTSD," and anxiety (the PSR noted the same diagnoses per evaluations in 2012), and argues that the district court did not give proper weight that "at the time of the offense, [he] was not on the appropriate medications." Brief for appellant at 16. He claims that since the offense and his move to the Lincoln Correctional Center, he has "been on the proper medications and his behavior has improved." *Id.* Busch also points out that the PSR did not recommend incarceration, but rather advised certain conditions for supervised parole and a new mental health evaluation and medication management.

Notwithstanding potentially mitigating information related to very low to low risk/need areas reported in the PSR, along with the information contained in Factor A that this court has reviewed, there was enough other information presented by the State at sentencing and contained in the PSR upon which the district court could rely to determine Busch's sentence. Thus, we cannot conclude that the district court abused its discretion in imposing Busch's sentence. See *State v. Mora, supra* (abuse of discretion occurs when trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence).

INEFFECTIVE ASSISTANCE OF COUNSEL

Busch claims he received ineffective assistance of counsel, and the record reflects that on appeal Busch is represented by different counsel than his trial counsel; trial counsel does not appear on Busch's appellate brief and trial counsel's motion to withdraw as counsel on appeal was sustained by this court. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018). Otherwise, the issue will be procedurally barred. *Id.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Avina-Murillo, supra*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018). The prejudice requirement in a plea context is satisfied if the defendant shows a "reasonable probability" that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016). Deficient performance and prejudice can be addressed in either order. *Id.* If it is more appropriate to dispose of an ineffectiveness claim due to lack of sufficient prejudice, that course should be followed. *Id.*

With these principles in mind, we address Busch's allegations regarding his trial counsel. Busch claims his trial counsel was ineffective in advising him (1) to plead no contest to one count of arson because he would likely receive a sentence of 5 to 10 years' imprisonment and (2) to answer in the negative when asked by the district court whether anyone made a promise to him in order for him to give up his rights. Busch argues that an evidentiary hearing would demonstrate that he would not have pleaded no contest and would have instead insisted on going to trial to ensure all relevant issues were considered.

We address these claims together and conclude they are without merit. Busch asserts that his "plea of no contest was a result of his trial counsel's assurances that [Busch] would receive a

much reduced sentence for one count of arson, in the range of 5 to 10 years." Reply brief for appellant at 3. Also, Busch claims his trial counsel advised him to answer in the negative when asked by the district court whether any promises were made to him in order for him to give up his rights. Regardless of Busch's assertions as to what his trial counsel may have said, the record affirmatively refutes his claim of ineffective assistance of counsel because it demonstrates his plea was entered knowingly, understandingly, intelligently, and voluntarily. At the onset of the plea hearing, the State informed the court that in exchange for the plea to one count of arson, the State would be dismissing three other counts and would "not seek to enhance this as a habitual criminal offense." Busch personally acknowledged his understanding of the agreement. After setting forth the many rights Busch was waiving by entering a plea, the district court specifically asked Busch, "Anyone connected with law enforcement or anyone else made any threat in any manner whatsoever or used any force or held out any inducement or promise other than the plea agreement to get you to give up any of the rights I have been explaining to you here now this afternoon?" Busch answered, "No, sir." Busch twice responded that he understood the possible penalty he faced for his offense which the district court had informed him was "a minimum of one year and a maximum of fifty years." The district court asked Busch if he believed his attorney was competent and knew what he was doing, and also asked if Busch was satisfied with the job his attorney had done. Busch answered, "Yes." The court specifically asked Busch if he was aware of the possible penalties he was facing and whether he had discussed those penalties with his attorney. Busch answered affirmatively. The record from the plea hearing demonstrates that even if Busch's trial counsel had made such statements to Busch, there were ample opportunities for Busch to answer honestly when inquiries were made by the court regarding such matters.

Notably, the Nebraska Supreme Court has considered and rejected a defendant's claim on direct appeal that trial counsel was ineffective based upon the promise of a particular sentence where the record affirmatively established that the defendant assured the district court on the record that no one had made any promises to induce the plea and the plea was made of the defendant's own free will. See *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018) (defendant claimed trial counsel advised her to plead guilty because she would receive lenient sentence; Nebraska Supreme Court held record on direct appeal affirmatively refuted defendant's claim where colloquy at plea hearing demonstrated that defendant denied that any threats or promises were made to induce her to enter guilty pleas).

Busch was afforded several opportunities before the district court to respond honestly if he had any concerns about what sentence might be imposed by the court. By his own responses to questions asked by the court, the record affirmatively refutes that any promises or threats were made to induce Busch's plea of no contest. Further, Busch obtained the benefit of the State not pursuing three other counts, along with a habitual criminal enhancement, all of which could have resulted in more severe sentencing if convicted. Given Busch's admission that he started the four separate fires underlying the charges against him, it is unlikely that but for Busch's alleged errors of counsel that there was a "reasonable probability" Busch would have insisted on going to trial rather than pleading guilty.

## CONCLUSION

For the reasons set forth above, we affirm Busch's conviction and sentence.

AFFIRMED.