Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/11/2018 08:10 AM CST

State of Nebraska, appellee, v.
Cody Lamberson, appellant.
___ N.W.2d ___

Filed December 4, 2018.    No. A-17-857.

1. **Trial: Convictions: Appeal and Error.** An appellate court will sustain
   a conviction in a bench trial of a criminal case if the properly admitted
   evidence, viewed and construed most favorably to the State, is sufficient
   to support that conviction.

2. **Convictions: Evidence: Appeal and Error.** When reviewing a criminal
   conviction for sufficiency of the evidence to sustain the conviction, an
   appellate court does not resolve conflicts in the evidence, pass on the
   credibility of witnesses, evaluate explanations, or reweigh the evidence
   presented, which are within a fact finder's province for disposition.
   Instead, the relevant question is whether, after viewing the evidence
   in the light most favorable to the prosecution, any rational trier of fact
   could have found the essential elements of the crime beyond a reason-
   able doubt.

3. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial
   counsel is different from his or her appellate counsel, all issues of inef-
   fective assistance of trial counsel that are known to the defendant or are
   apparent from the record must be raised on direct appeal. If the issues
   are not raised, they are procedurally barred.

4. **Effectiveness of Counsel: Constitutional Law: Statutes: Records:
   Appeal and Error.** Whether a claim of ineffective assistance of trial
   counsel can be determined on direct appeal presents a question of law,
   which turns upon the sufficiency of the record to address the claim
   without an evidentiary hearing or whether the claim rests solely on the
   interpretation of a statute or constitutional requirement. An appellate
   court determines as a matter of law whether the record conclusively
   shows that (1) a defense counsel's performance was deficient or (2)
   a defendant was or was not prejudiced by a defense counsel's alleged
   deficient performance.

5. **Trial: Effectiveness of Counsel: Evidence: Appeal and Error.** An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

6. **Due Process: Convictions: Appeal and Error.** Due process does not require an appellate court, upon review of a criminal conviction, to take the inference most favorable to the accused.

7. **Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

8. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. Such a claim may be resolved when the record on direct appeal is sufficient to either affirmatively prove or rebut the merits of the claim. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

9. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

10. **Constitutional Law: Right to Counsel.** The Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings. Interrogation by the State is one of those critical stages.

11. **Constitutional Law: Right to Counsel: Waiver.** The Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. Further, the defendant may waive the right regardless of whether or not he is already represented by counsel and the decision to waive need not itself be counseled.

12. **Effectiveness of Counsel.** Defense counsel is not ineffective for failing to raise an argument that has no merit.

13. **Miranda Rights: Waiver.** A *Miranda* waiver may be either express or implied.

14. \_\_\_\_: \_\_\_\_. An express waiver of a suspect's *Miranda* rights may be in writing or oral.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Sean M. Reagan, of Reagan, Melton & Delaney, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

PIRTLE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Cody Lamberson appeals his conviction for child enticement. He contends that the evidence was insufficient to support his conviction and that his trial counsel was ineffective by withdrawing his motion to suppress, failing to renew the motion during trial, and failing to adduce evidence in Lamberson's defense. Finding no merit to the arguments raised by Lamberson on direct appeal, we affirm his conviction and sentence.

## STATEMENT OF FACTS

On March 25, 2016, the 15-year-old victim and her foster sister were at an outlet mall in Gretna, Nebraska. Using her cell phone and the outlet mall's Wi-Fi, the victim was having a conversation with her 24-year-old adopted brother Lamberson via "Snapchat," a social media messaging application. The 20-minute conversation consisted of the victim and Lamberson asking each other how they were doing, because they had not seen each other or otherwise communicated in about a year. The victim testified at trial that she and Lamberson did not talk about sex during their Snapchat conversation. Snapchat messages disappear after a short period of time if they are not saved. When the victim was leaving the outlet mall and

would no longer have Wi-Fi available to continue the Snapchat conversation with Lamberson, she asked him to send her text messages instead of using Snapchat.

The following unedited conversation took place, via text message, between the victim and Lamberson:

> [Lamberson:] Would you really hook up with me? 8:49 PM
>
> [The victim:] Idk your drink and I'm got little sister 8:49 PM
>
> [Lamberson:] Its OK I know you wouldn't 8:51 PM
>
> [The victim:] I'm sorry. And you got a wife for that 8:51 PM
>
> [Lamberson:] I know but I want u 8:53 PM
>
> [The victim:] Why 8:53 PM
>
> [The victim:] Text me bc I don't have WiFi 8:55 PM
>
> [Lamberson:] Your super hot and show you how good it feels 8:56 PM
>
> [The victim:] Ohhhhhhhhhhh 8:57 PM
>
> [Lamberson:] Ya and I have been with another woman in five years and really like you 9:08 PM
>
> [Lamberson:] Haven't been with 9:15 PM
>
> [The victim:] Cody I'm your little sister 9:18 PM
>
> [Lamberson:] I know it makes me want it a little more but I'll stop and not bring it up again I'm sorry 9:20 PM
>
> [The victim:] You shouldn't even been asking 9:21 PM
>
> [Lamberson:] It was a joke 9:22 PM
>
> [The victim:] Oh okaii sorry 9:22 PM
>
> [The victim:] Goodnight love you 10:25 PM
>
> [Lamberson:] KNIGHT love Ya too hun 10:26 PM
>
> [The victim:] Talk to you tomorrow?? 10:26 PM
>
> [Lamberson:] Of course boo 10:27 PM

The victim showed the texts to her foster mother, who called police. Lamberson was arrested and charged with child enticement, a Class ID felony. See Neb. Rev. Stat. § 28-320.02 (Reissue 2016).

The trial in this matter was held on June 13, 2017. Although several witnesses testified at trial, the majority of the State's

evidence was adduced through testimony from a Sarpy County sheriff's deputy, Darin Morrissey; through testimony from the victim; through exhibit 1, an audio recording of Lamberson's interview with law enforcement; and through another exhibit that contained screenshots of the text messages exchanged between Lamberson and the victim.

Morrissey is a computer and cell phone forensic examiner who investigates fraud and any cases involving computers and cell phones, which includes child pornography, child enticement, and some child abuse cases. On March 31, 2016, he was assigned a child enticement case involving Lamberson and a cell phone. On cross-examination, Morrissey testified that, during the interview with Lamberson, he asked Lamberson about the text that said, "Your super hot and show you how good it feels." That text concerned Morrissey because it alluded to sexual contact; however, he admitted that there was nothing in the text directly referencing sexual contact.

On redirect examination, Morrissey was asked:

> Q. In dealing with child enticement cases, are you familiar with the term "hook up"?
>
> A. Yes.
>
> . . . .
>
> [Defense counsel]: Objection. Foundation, hearsay.
>
> THE COURT: Sustained.
>
> [The State]: Judge, can I ask on which portion?
>
> THE COURT: Foundation.
>
> [The State]: Thank you.
>
> Q. . . . Sir, in child enticement cases, are you — do you have to be familiar with quote, unquote, lingo of people?
>
> A. Yes.
>
> Q. And what's that mean?

At this point, defense counsel made another foundational objection which was overruled by the district court. Morrissey continued: "There are phrases for all different age groups that I have to be familiar with. Many of the types of cases — child enticement — are started over e-mails, text messages, applications which all deal with - . . . ." Defense counsel again

objected that the witness was reciting a narrative and that the answer was beyond the scope of the question. These objections were overruled, and the witness resumed:

All over messaging conversations. So I've seen lots of lingo, lots of phrases that — and know what they mean. That's just part of my job.

Q. . . . Is it part of your job, in dealing with child enticement, sexual abuse, things of that nature, to know slang?

A. Yes.

Q. Why is that important?

A. Because that's how they communicate. Shortened words, certain phrases mean certain things. They don't spell it all out.

Q. So in that regard, what does "hook up" mean?

Defense counsel posed a foundational objection based on hearsay which was sustained by the court. The State argued that the defense opened the door for Morrissey's opinion "because that's what he was asking on cross-examination, his opinion as to what these mean. So I think he's allowed to give his opinion to what that means if [defense counsel] already went through that with him." The court repeated that it was sustaining the objection based upon foundation. The State continued its questioning:

Q. . . . Have you ever used the term "hook up"?

A. Yes.

Q. Have you ever heard other people use the term "hook up"?

A. Yes.

Q. What does it mean?

Defense counsel again posed a foundational objection which was overruled. Morrissey stated, "It's in relation to getting together for sexual contact."

Morrissey interviewed Lamberson on June 22, 2016, at the Sarpy County jail. An audio recording of that interview was received into evidence as exhibit 1. Morrissey was unaware at the time he went to the interview that Lamberson had been

appointed an attorney a few hours before the interview. He became aware that Lamberson had been appointed an attorney near the end of the interview.

The recording included a recitation by Morrissey of Lamberson's *Miranda* rights. After being advised of his rights, Lamberson acknowledged that he understood his rights. Although Morrissey did not ask Lamberson if he was waiving his rights, Lamberson continued talking to Morrissey. During the interview, Lamberson admitted to the text message conversation with the victim but stated that it was "way out of context from what I remember it being" and that it was being "blown way out of proportion." Lamberson told Morrissey that when he asked, "Would you really hook up with me?" in the text message, he did not mean "have sex with"; rather, he meant "link up," which he explained was a meaning from his "military" background. He did not have an explanation for some of the other texts such as "[y]our super hot and show you how good it feels" and "I know it makes me want it a little more but I'll stop and not bring it up again[,] I'm sorry." He stated that he said that he had not been with another woman in 5 years because he had "been with [his] wife the whole time." He stated that when he said, "[I] really like you," it was "cause she's my little sister. Of course I'm going to like her." He further explained when he said, "It was a joke," there were missing texts where he called himself "fat" and stated that the victim "wouldn't want to hang out with [him]."

The victim testified as to the facts previously set forth. She also testified that she did not think Lamberson was joking when he sent the text messages, that the text messages made her feel "weird," and that she was "creeped out" because Lamberson was her adopted brother. The victim also testified that she showed the texts from Lamberson to her foster mother, because her foster mother would regularly look through the victim's cell phone and would have found out and because she "didn't want it to happen again." The victim

admitted that she did not feel threatened, intimidated, or coerced by Lamberson.

The defense did not present any evidence. The court found Lamberson guilty of the charged offense and sentenced him to 3 to 4 years' imprisonment with credit for 2 days served. Lamberson has timely appealed to this court and is represented by different counsel than represented him at trial.

## ASSIGNMENTS OF ERROR

Lamberson contends that there was insufficient evidence to support his conviction and that his trial counsel was ineffective by withdrawing his motion to suppress, failing to renew the motion during trial, and failing to adduce certain evidence in Lamberson's defense.

## STANDARD OF REVIEW

[1,2] An appellate court will sustain a conviction in a bench trial of a criminal case if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. *State v. Schuller*, 287 Neb. 500, 843 N.W.2d 626 (2014). In making this determination, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition. *Id*. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

[3] When a defendant's trial counsel is different from his or her appellate counsel, all issues of ineffective assistance of trial counsel that are known to the defendant or are apparent from the record must be raised on direct appeal. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). If the issues are not raised, they are procedurally barred. *Id*.

[4,5] Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address

the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018), *disapproved on other grounds, State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865. An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018).

## ANALYSIS

### Sufficiency of Evidence

Lamberson was tried and convicted of violating § 28-320.02(1). The State concedes in its brief on appeal that the applicable portion of § 28-320.02(1) provides: "No person shall knowingly solicit, coax, entice, or lure (a) a child sixteen years of age or younger . . . by means of an electronic communication device as that term is defined in section 28-833, to engage in an act which would be in violation of section 28-319 . . . ." The applicable portion of Neb. Rev. Stat § 28-319(1) (Reissue 2016) provides: "Any person who subjects another person to sexual penetration . . . (c) when the actor is nineteen years of age or older and the victim is at least twelve but less than sixteen years of age is guilty of sexual assault in the first degree." Taken together, there would be sufficient evidence to support Lamberson's conviction for enticement if the combined Snapchat and text communications with the 15-year-old victim constituted a knowing solicitation, coaxing, enticement, or luring of the victim to engage with him in an act involving sexual penetration.

Lamberson does not challenge that he is 19 years of age or older, that the victim was at least 12 years of age but less than 16 years of age, or that the medium used for

communication was an electronic device as defined by statute. Instead, Lamberson argues that the substance of his communications with the victim did not amount to a knowing solicitation, coaxing, enticement, or luring of the victim and that the language used by him did not request the victim to engage in an act involving sexual penetration. We will analyze these arguments independently.

The Nebraska Supreme Court had occasion to interpret the language of § 28-320.02(1) in *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014). In *Knutson*, the Supreme Court held:

> As relevant here, the conduct prohibited by § 28-320.02(1) is using an electronic communication device to knowingly "solicit, coax, entice, or lure" a child 16 years of age or younger "to engage in an act which would be in violation of" § 28-319.01. The verbs in this sentence all deal with the act of persuading—in this context, persuading someone 16 years of age or younger to perform a sexual act that is illegal under the specified statutes.

288 Neb. at 841, 852 N.W.2d at 322.

In the context of the case presently before this court, in order to constitute a violation of § 28-320.02(1), the language used by Lamberson in his Snapchat and text communications must constitute knowing persuasion by him to have the victim perform a sexual act involving penetration. "Sexual penetration" is defined by Nebraska statute as

> sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration shall not require emission of semen.

Neb. Rev. Stat. § 28-318(6) (Reissue 2016).

Applying our standard of review, after viewing the evidence in the light most favorable to the State, we agree that a

reasonable trier of fact could have found that Lamberson's language used in his electronic communications constituted language of persuasion. The more difficult question here involves the proposed act that Lamberson was attempting to persuade the victim to perform.

In this case, Lamberson specifically requested the 15-year-old victim to "hook up" with him. As stated before, in this particular case, in order to be a violation of § 28-320.02(1), a reasonable trier of fact needed to find that the term "hook up" was a solicitation by Lamberson for the 15-year-old victim to engage in an act involving sexual penetration. We acknowledge that the term "hook up" can have multiple meanings; however, we review the meaning of the term in the context of the other evidence in this case.

In analyzing this matter, the primary evidence in this case involved the language of the texts, the victim's testimony, Lamberson's interview with police, and the testimony of computer and cell phone forensic examiner Morrissey, who investigated cases of fraud involving computers and cell phones, which includes child pornography, child enticements, and some child abuse cases. When asked about the meaning of the term "hook up," Morrissey testified that it is a term commonly used in connection with requested "sexual contact." The issue in this case is not whether Lamberson was attempting to persuade the victim to engage in an act involving any sexual contact, but, rather, the issue here is whether Lamberson was attempting to persuade the victim to engage in an act involving sexual penetration.

We next note the remaining language of the text exchange. In addition to asking the victim to "hook up," Lamberson attempted to explain that he had not "been with another woman in five years" and that he wanted to show the victim "how good it feels." The victim responded to Lamberson that "you got a wife for that" and otherwise resisted Lamberson's advances, including reminding him that she was his "little sister."

[6,7] Again, the issue here is whether any reasonable trier of fact would have found that Lamberson used language which demonstrates a knowing attempt to persuade the 15-year-old victim to engage in a sexual act involving penetration. We note that "[d]ue process does not require an appellate court, upon review of a criminal conviction, to take the inference most favorable to the accused." *State v. Pierce*, 248 Neb. 536, 547, 537 N.W.2d 323, 330 (1995), citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "When reviewing a criminal conviction, the relevant question for an appellate court is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.*, quoting *Jackson, supra*. "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id*. at 548, 538 N.W.2d at 330, quoting *Jackson, supra*.

Here, we conclude that a reasonable trier of fact could find the language used by Lamberson in his texts constituted an attempt to persuade the victim to engage in a sexual act involving penetration. Because we find that a reasonable trier of fact could reach that conclusion, we reject his argument that the evidence was insufficient to support his conviction.

### Ineffective Assistance of Counsel

Lamberson contends that his trial counsel was ineffective by withdrawing his motion to suppress, failing to renew the motion during trial, and failing to adduce certain evidence in his defense.

[8] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Wells*, 300 Neb. 296, 912 N.W.2d 896 (2018). Such a claim may be resolved when the record on

direct appeal is sufficient to either affirmatively prove or rebut the merits of the claim. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

[9] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018).

### MOTION TO SUPPRESS

Lamberson first claims that trial counsel's withdrawal of the motion to suppress Lamberson's statement to Morrissey and failure to renew the motion during trial erroneously allowed the court to hear Lamberson's statement that was made "after an attorney had been appointed, but without the attorney's knowledge or Lamberson being allowed to speak with [his] attorney." Brief for appellant at 21. The full statement was admitted into evidence, and therefore, the record on appeal is sufficient for us to review this claim.

[10] At the time of Lamberson's custodial interrogation by Morrissey, an attorney had been appointed to represent Lamberson. Thus, we interpret Lamberson's claim as referencing a violation of his Sixth Amendment right to counsel. "[T]he Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009). Interrogation by the State is one of those critical stages. *Id*.

[11] Lamberson appears to argue that his rights were violated because Morrissey conducted a custodial interrogation of Lamberson after an attorney had been appointed and did

so without contacting the attorney prior to the interview or allowing Lamberson to speak to him. Contrary to Lamberson's argument, the U.S. Supreme Court has rejected the position that a defendant, who was represented by counsel, cannot be approached by an investigator of the State and asked to consent to interrogation. See *id*. Rather, the Court held that "[w]hat matters for *Miranda* . . . is what happens when the defendant is approached for interrogation, and (if he consents) what happens during the interrogation—not what happened at any preliminary hearing." *Montejo*, 556 U.S. at 797. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The Court noted that the Sixth Amendment right to counsel "may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Montejo*, 556 U.S. at 786. Further, the defendant may waive the right regardless of whether or not he is already represented by counsel and the decision to waive need not itself be counseled. *Id*.

> [W]hen a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the *Miranda* rights purportedly have their source in the *Fifth* Amendment: "'As a general matter . . . an accused who is admonished with the warnings prescribed by the Court in *Miranda* . . . has been sufficiently apprised of the nature of his Sixth amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one.' . . ."

*Montejo*, 556 U.S. at 786-87 (emphasis in original). Thus, the doctrine established by *Miranda* protects "the right to have counsel present during custodial interrogation—which right happens to be guaranteed (once the adversary judicial process has begun) by *two* sources of law"—the Fifth Amendment and the Sixth Amendment. *Montejo*, 556 U.S. at 795 (emphasis in original). "Since the right under both sources is waived using

the same procedure, . . . doctrines ensuring voluntariness of the Fifth Amendment waiver simultaneously ensure the voluntariness of the Sixth Amendment waiver." *Montejo*, 556 U.S. at 795.

[12] Pursuant to the U.S. Supreme Court's dictates in *Montejo, supra*, even though an attorney had been appointed, Morrissey had the right to request that Lamberson consent to an interview so long as Lamberson was advised of his *Miranda* rights and waived them. Lamberson's claims to the contrary are without merit, and his claim of ineffectiveness of counsel on this basis must fail. Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017).

Lamberson also claims that his statements and admissions should have been challenged as being obtained in violation of his *Miranda* rights, his rights under the Fifth and Sixth Amendments to the U.S. Constitution, and his rights under article I, §§ 3 and 12, of the Nebraska Constitution. The record on appeal is likewise sufficient for us to review this claim.

Exhibit 1 consists of an audio recording of Morrissey's interview with Lamberson. At the beginning of the interview, Morrissey read Lamberson his *Miranda* rights and Lamberson stated that he understood them; however, he never expressly waived his *Miranda* rights. A finding that Lamberson voluntarily waived his *Miranda* rights would result in the finding that he waived his right to counsel under both the Fifth and Sixth Amendments. See *Montejo v. Louisiana*, 556 U.S. 778, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009).

[13,14] Although Lamberson never specifically stated that he waived his *Miranda* rights, this is not dispositive. A *Miranda* waiver may be either express or implied. See *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018). An express waiver of a suspect's *Miranda* rights may be in writing or oral. See *Hernandez, supra*. In this case, there was no express waiver of *Miranda* rights by Lamberson.

A *Miranda* waiver may also be implied. See *Hernandez, supra*. See, also, *Berghuis v. Thompkins*, 560 U.S. 370, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010).

> A "defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver," may establish a valid, implied waiver. [*North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979).] Thus, "[w]here the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent. [*Berghuis*, 560 U.S. at 384.]

*Hernandez*, 299 Neb. at 919, 911 N.W.2d at 544.

The Nebraska Supreme Court considered a comparable factual situation in *Hernandez, supra*, where the defendant was advised of his *Miranda* rights and indicated that he understood them, but the issue remained regarding whether he knowingly and voluntarily waived those rights. The court held that "by voluntarily speaking with the investigators, [the defendant] impliedly waived his rights." *Hernandez*, 299 Neb. at 919, 911 N.W.2d at 544.

Similarly, in *U.S. v. Umana*, 750 F.3d 320 (4th Cir. 2014), a defendant waived his *Miranda* rights when he stated that he understood them and then talked to detectives. The Fourth Circuit Court of Appeals stated:

> "To effectuate a waiver of one's *Miranda* rights, a suspect need not utter any particular words." . . . A suspect impliedly waives his *Miranda* rights when he acknowledges that he understands the *Miranda* warning and then subsequently is willing to answer questions. . . . That is precisely what happened in this case.

*Umana*, 750 F.3d at 344.

The factual situation presented to this court for determination does not differ in any significant respect. Morrissey informed Lamberson of his *Miranda* rights, and Lamberson expressly stated that he understood those rights. Lamberson

went on to willingly engage in a dialogue with Morrissey in which Lamberson both asked questions and answered questions. Lamberson's actions constitute an implied waiver of his *Miranda* rights. As such, Lamberson's counsel was not ineffective for failing to challenge that Lamberson's statements and admissions were obtained in violation of his *Miranda* rights, his rights under the Fifth and Sixth Amendments to the U.S. Constitution, and his rights under article I, §§ 3 and 12, of the Nebraska Constitution. As we mentioned before, defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). Thus, we reject Lamberson's claims that his trial counsel was ineffective by withdrawing his motion to suppress, failing to renew the motion during trial, and failing to challenge his statements and admissions as being obtained in violation of his *Miranda* rights, his rights under the Fifth and Sixth Amendments to the U.S. Constitution, and his rights under article I, §§ 3 and 12, of the Nebraska Constitution.

### Failure to Adduce Evidence in Lamberson's Defense

Lamberson further contends that his trial counsel was ineffective for failing to adduce evidence in Lamberson's defense. Specifically, he contends that trial counsel failed to adduce any evidence to dispute Morrissey's testimony regarding the definition of the term "hook up," failed to "request the ability to re-cross . . . Morrissey" regarding his testimony or to call Morrissey as a witness, and failed to present any evidence to refute Morrissey's testimony. Brief for appellant at 22.

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018). An ineffective assistance of counsel claim will not be addressed on direct appeal if it

requires an evidentiary hearing. *Id*. The record before this court is insufficient to address this allegation on direct appeal.

## CONCLUSION

Having found that the evidence was sufficient to support Lamberson's conviction, we affirm his conviction and sentence. We find that the record is sufficient to review Lamberson's claim that his trial counsel was ineffective by withdrawing his motion to suppress and failing to renew the motion during trial, which allowed the court to hear Lamberson's statement to Morrissey after an attorney had been appointed, but without the attorney's knowledge or Lamberson's being allowed to speak with his attorney, and we find that this claim is without merit. Likewise, the record is sufficient to review Lamberson's claim that his trial counsel was ineffective by failing to challenge his statements and admissions as being obtained in violation of his *Miranda* rights, his rights under the Fifth and Sixth Amendments to the U.S. Constitution, and his rights under article I, §§ 3 and 12, of the Nebraska Constitution, and we find that this claim is without merit. The record before this court is not sufficient to address Lamberson's claim that his trial counsel was ineffective for failing to adduce any evidence in his defense to dispute Morrissey's testimony regarding the definition of the term "hook up," failing to request the ability to re-cross-examine Morrissey regarding his testimony or call Morrissey as a witness, and failing to present any evidence to refute Morrissey's testimony.

Affirmed.